## 39170. BLALOCK v. THE STATE.

CLARKE, Justice.

Appellant, Rose Blalock, was charged with being a party to the murder and armed robbery of her ex-husband, Hugh Blalock. The state sought the death penalty and the jury found her guilty on both counts and returned a sentence of life imprisonment on the murder; she received a concurrent life term for armed robbery. Her motion for new trial was denied and she brings this appeal.

This case involves questions of witness sequestration, declarations by co-conspirators, admissibility of prior threats made by a defendant against the victim, and whether the state could seek the death penalty when the accomplices received life sentences in return for their testimony. We find no error and affirm.

Although Rose was divorced from the victim at the time of the killing, November 7, 1980, they were continuing to live together. It was established that their relationship had been a turbulent one over the years and that they had been divorced from each other before, and remarried prior to the most recent divorce in February of 1980.

Hugh Blalock's body was found in his car near a church in Floyd County. His death was caused by shotgun wounds. It was known he was carrying around $600 in cash when last seen but no money was found on the body. On November 18, 1980, the police questioned and then arrested two suspects, Del Monte Conway and Bobby Baker. Individually they gave statements implicating themselves and each other. In addition, each implicated Rose Blalock as the person who set up the scheme to have them kill her ex-husband in exchange for $2,000 which would come from insurance proceeds. According to their statements and testimony, they were to take Hugh's money to make the motive appear to be robbery, and this money would be a down payment on the contract. It was established at trial that Conway and Baker agreed to testify for the state in exchange for life sentences.

1. In her first enumeration of error the appellant contends the court erred in excepting a state's witness from the rule of sequestration in violation of OCGA § 24-9-61 (Code Ann. § 38-1703). The witness was a police detective who was the chief investigating officer. The prosecutor stated that he needed him for presentation of the case and that to require him to testify first would interfere with the orderly presentation of the case. In this situation we have found the exception of a witness from the rule of sequestration is within the discretion of the trial judge. *Davis v. State,* 242 Ga. 901 (252 SE2d 443) (1979). We find no abuse of discretion and there is no merit to this enumeration of error.

2. During the state's presentation, Baker was allowed to testify over defense objection as to a statement made to him by Conway in June of 1980 that she knew where they could make $2,000 for killing Hugh Blalock. He stated that his response at that time was negative. The appellant contends this was error on the grounds that if a conspiracy existed between Conway, Baker and the appellant, it was not formed until November 7, 1980, when Hugh Blalock was killed and the statement referring to June of 1980 was inadmissible hearsay. When Conway later testified she related that on numerous occasions the appellant had communicated to her an offer to pay $2,000 to have Hugh killed. Baker and Conway did in fact participate in the murder of Hugh Blalock.

"After the fact of conspiracy is proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all." OCGA § 24-3-5 (Code Ann. § 38-306). Here the trial court allowed Baker's testimony on the condition that a conspiracy be shown by all of the evidence. The order of proof is in the discretion of the judge and there is no error in admitting such declarations if a prima facie case of conspiracy is proved by the state. *Fallings v. State,* 232 Ga. 798 (209 SE2d 151) (1974).

We also reject appellant's argument that because the statement was made some five months prior to the killing and Baker expressed disinterest it was not made during the pendency of a conspiracy. In *Knight v. State,* 239 Ga. 594 (238 SE2d 390) (1977), we held admissible a co-conspirator's statement made three months prior to the killing. The "criminal project" language in the statute may include "the creation of the original motive to commit the crime, the plan to commit it and the carrying out of the plan. . . . One party could have a motive or an intent to commit a crime for a substantial period of time before he obtains another or others to join with him in a conspiracy to carry it out." *Knight* at 599.

There was evidence that appellant had been making offers of money as early as 1979 to have Hugh killed. Although Baker initially declined the offer there was evidence he later accepted the offer and participated in the murder. We hold for the above reasons the statement was admissible.

3. The state presented several witnesses who testified as to various threats made by the appellant against the victim from October of 1978 until January of 1980. These included threats that appellant would kill Hugh Blalock herself and threats and offers to have him killed. The appellant contends the statements were too remote and had no relevance. We do not agree.

"In a murder prosecution, evidence of prior quarrels and difficulties between the defendant and the victim, . . . thereby

shedding light upon the motive of the killing and explaining conduct, is admissible." *Gunter v. State,* 243 Ga. 651, 656 (256 SE2d 341) (1979). The prior difficulties between the appellant and the victim were caused by his relationship with another woman, Janice Cochran. The appellant contends that the difficulties had been resolved. However, on the day of the murder the victim had spent the afternoon with Ms. Cochran. There was evidence that the appellant was aware of this fact and was very angry with the victim. There was also evidence of continuing threats in 1980. Under these circumstances the prior incidents were properly admitted.

4. The appellant contends the conviction must be reversed because it rests on the uncorroborated testimony of an accomplice in violation of OCGA § 24-4-8 (Code Ann. § 38-121). Baker and Conway both testified at trial. The testimony of one accomplice may be corroborated by the testimony of another accomplice. *Eubanks v. State,* 240 Ga. 544 (242 SE2d 41) (1978). The appellant argues that *Eubanks* should not apply here because parts of Baker's and Conway's statements were inconsistent and therefore do not corroborate each other.

Each of the accomplices testified that a conspiracy existed which was planned by the appellant, that the appellant offered $2,000 to have her husband killed, and that the killing was accomplished in furtherance of that plan. At trial and in prior statements the testimony of Baker and Conway differed in some particulars. The points of departure are that each attempts to place more culpability on the other in carrying out the scheme; each testified that although present at the scene the other actually shot the victim.

At the appellant's trial, the question of whether Baker or Conway was more involved or pulled the trigger was irrelevant. The ultimate question was whether appellant was involved in the scheme to have the victim killed. The accomplices amply corroborated each other on this point. Appellant's involvement was also corroborated by testimony of other witnesses that the appellant had made similar offers to them to have the victim killed. The necessary corroboration may be by circumstantial evidence. *Drake v. State,* 241 Ga. 583 (247 SE2d 57) (1978). We hold the corroboration in this case is sufficient.

5. The appellant filed a pretrial motion to bar the state from seeking the death penalty on the grounds that her two accomplices received life sentences in exchange for their testimony. She contends that she was prejudiced in the guilt-innocence phase since the jury knew they would later decide punishment. The jury was properly charged in the first phase of the bifurcated trial that they were only to determine issues of guilt or innocence. The fact that the

co-conspirators may have been testifying in exchange for life sentences was before the jury; any effect this would have as to their credibility was in appellant's favor. The appellant also received a life sentence. We find no harm and no merit to this contention.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 4, 1983.

*Timothy A. Pape,* for appellant.

*F. Larry Salmon, District Attorney, William H. Boggs, Assistant District Attorney, Michael J. Bowers, Attorney General, Mary Beth Westmoreland, Assistant Attorney General,* for appellee.