A90A1099. FREELS v. THE STATE.
(394 SE2d 405)

DEEN, Presiding Judge.
   Kendra Urbanski, a twenty-six-year-old divorcee who lived with her mother and young daughter, accused appellant of raping her at his home after they had spent several hours drinking and dancing at two Gwinnett County restaurant-bars. Ms. Urbanski had gone to the first establishment with her mother and had fallen into conversation with appellant after he introduced himself and offered to buy her a drink. She accompanied him to the second restaurant-bar for the stated purpose of listening to a particular kind of music available there. Because Freels was temporarily without his own vehicle, Urbanski borrowed her mother's car after agreeing to pick the latter up at 2:00 a.m. (when the bar closed) and drove him to the second restaurant.
   According to Urbanski's testimony, Freels had insisted on kissing her and making other intimate overtures while they danced or sat

drinking; according to Freels, it was not he but Urbanski who initiated these acts. When it was almost time for her to pick up her mother, Urbanski and Freels left the second restaurant, and she drove him to his home, following his spoken directions. According to Freels, he invited her to come in and she accepted, thereafter asking to use the bathroom. According to Urbanski, she asked before leaving the car if she might come in for the express purpose of using the bathroom before proceeding to pick up her mother; it was immediately after she emerged from the bathroom, she alleged, that Freels grabbed her hands, "dragged" her into the adjacent bedroom, and forced her, over protests that she had to get her mother and did not wish sex, to engage in sexual relations. Freels' version was that Urbanski willingly entered the bedroom and engaged in sex, the only condition being that they do it quickly so that she could go ahead and get her mother. The parties agreed that after the bedroom episode was concluded, Freels asked Urbanski to write and sign a statement that she had not been raped but had gone to bed with Freels of her own free will. The signed, hand-written statement was offered in evidence, Freels alleging that the statement was given willingly and proved consensuality, while Urbanski argued that it was given only after Freels had threatened her with battery. Urbanski then drove home, conferred with her mother, and called the police. Freels was subsequently located and arrested.

At trial an experienced gynecologist, whose credentials as an expert witness had been stipulated and who examined Urbanski shortly after she had reported the incident, testified that the faint skin discolorations and the vaginal tear revealed by her examination were consistent with non-consensual intercourse, or rape. The defense attempted to impeach Urbanski's credibility.

A jury found Freels guilty as charged. After denial of his motion for new trial, Freels appeals, enumerating as error the prosecutor's alleged "bolstering" of his witnesses' testimony; the prosecutor's "read[ing] and argu[ing] law to the jury"; the trial court's permitting the investigating officer to remain in the courtroom after the rule of sequestration had been invoked; the denial of appellant's motion for mistrial on the basis that Urbanski's entire statement was read to the jury; and the trial court's permitting this statement to be read to the jury by the investigating officer. *Held*:

1. Our scrutiny of the trial transcript reveals nothing in the prosecution's statement that could reasonably be interpreted as improperly "bolstering" his witnesses' testimony. Moreover, the cases cited in appellant's brief in support of his enumeration do not support his main objection, i.e., "bolstering," but pertain only to ancillary points. The transcript further reveals that no objection was made below to these remarks; therefore, the alleged error was not preserved for ap-

pellate review. We find no merit in this enumeration.

2. Although, as appellant correctly states, the ancient practice of counsel's "reading law" to the jury (in the specialized sense of reading aloud cases which purportedly illustrate the legal principles of which counsel wishes the jury to be aware) was abolished in *Conklin v. State*, 254 Ga. 558, 571 (331 SE2d 532) (1985), that case by no means precluded the citation or discussion of relevant statutory law. In *Conklin* the court observed that the enactment of OCGA § 5-5-24, which provides for written requests to charge and requires the court to inform counsel of the requests' acceptance or rejection, renders "reading the law" both unnecessary and incorrect, supra at 569. The court expressly held, however, at 570, that "[c]ounsel have every right to refer to applicable law during closing argument (i.e., law that the court is going to give in charge)." This court interpreted *Conklin* in *Dorsey v. State*, 188 Ga. App. 695 (374 SE2d 102) (1988), where we cited *Beck v. State*, 181 Ga. App. 681, 683 (353 SE2d 610) (1987), and held that " '[i]t is counsel's right to state his legal position to the jury; this right is indispensable to an intelligent presentation of his case.' Error flows from a misstatement of the law which may tend to mislead the jury. Defendant has failed to point out wherein there was such misstatement of the law and thus did not show harm."

In the instant case, as in *Beck* and *Dorsey*, there is no indication that the prosecutor misstated the law, and appellant has not demonstrated that any harm flowed from his discussion of it. Appellant's second enumeration is without merit.

3. In *Blalock v. State*, 250 Ga. 441 (298 SE2d 477) (1983), "[t]he witness was a police [officer] who was the chief investigating officer. The prosecutor stated that he needed him for presentation of the case and that to require him to testify first would interfere with the orderly presentation of the case. In this situation [, the court pronounced,] we have found [that] the exception of a witness from the rule of sequestration is within the discretion of trial judge. [Cit.]" With identical facts in the case *sub judice*, we find *Blalock* controlling and appellant's third enumeration, therefore, devoid of merit.

4. In *Lowe v. State*, 97 Ga. 792 (25 SE 676) (1895), the Supreme Court held, at 794: "The rule is well settled, that where an effort is made to impeach a witness by proving contradictory statements made in a conversation which occurred previously to the trial, it is competent to sustain the witness by bringing out the whole of that conversation, in order that the true drift and meaning of what was then said . . . may be correctly understood." Accord *Cuzzort v. State*, 254 Ga. 745 (334 SE2d 661) (1985); *Johnson v. State*, 244 Ga. 295 (260 SE2d 23) (1979). We find no error either in the trial court's allowing Ms. Urbanski's entire prior statement to be read to the jury, or in his permitting the investigating officer to be the reader.

*Judgment affirmed. Pope and Beasley, JJ., concur.*

DECIDED MAY 11, 1990.

*Ronnie K. Batchelor*, for appellant.
*Thomas C. Lawler III, District Attorney, Debra K. Turner, Terry L. Lloyd, Assistant District Attorneys*, for appellee.