## S04A0071. WILLIAMS v. THE STATE.

(596 SE2d 597)

BENHAM, Justice.

This appeal is from Willie Jerome Williams's convictions for malice murder and possession of a firearm during the commission of a crime.[1] The evidence at trial showed Williams and another man brought Classie Patillo to a hospital dead from a gunshot wound, the bullet having entered her back and passed through both her lungs and her spine. One emergency room registration clerk testified Williams told her he and Patillo were looking at the gun and it went off as she tried to put it away. Another emergency room registration clerk testified Williams told her he and Patillo were looking at the gun and it discharged accidentally when he tried to take it from her to put it away. A police officer who interviewed Williams at the emergency room testified Williams said Patillo had taken the pistol from his hand and dropped it on the floor, causing it to discharge. Two witnesses who were in the house when the shooting occurred testified they heard Williams and Patillo in an adjoining room arguing and then having sex. One witness testified she heard Patillo scream Williams's name, then heard a loud bang, following which Williams came to the other couple's room and said Patillo had shot herself. The other witness who was in the house when the shooting occurred testi-

---

[1] The crimes were committed on January 7, 2002, and Williams was indicted on June 18, 2002, for malice murder, felony murder (aggravated assault), possession of a firearm during the commission of a crime (three counts), and aggravated assault. A trial conducted November 11-13, 2002, resulted in a verdict of guilty on all counts. The trial court sentenced Williams to life imprisonment for murder and to a consecutive term of five years for the related firearm possession count. The other convictions either were vacated by operation of law or merged into those offenses. A motion for new trial filed on December 4, 2002, and amended on March 7 and March 24, 2003, was denied on April 1, 2003, and Williams filed a notice of appeal on April 17, 2003, pursuant to which the record was transmitted to this Court. The appeal was docketed in this Court on September 16, 2003, and was submitted for decision following oral argument on January 27, 2004.

fied Williams told him he dropped the weapon when Patillo grabbed it and it fired upon hitting the floor. A firearms examiner testified the weapon had to be cocked to fire and could not accidentally fire by being dropped. Forensic testimony established the bullet was fired from a distance of two to four inches and went through Patillo's body from back to front, right to left, and down. Three friends of Patillo's were permitted to testify over Williams's hearsay objection to instances of prior difficulty between Williams and Patillo. Williams testified the shooting was an accident caused by Patillo pulling on the hand in which he held the weapon as she implored him not to leave. He explained his various inconsistent statements, including one in which he admitted he cocked the gun and had his finger on the trigger as he struggled with Patillo, as having been made while he was in shock and denial regarding his possession of the gun.

1. The evidence adduced at trial, as summarized above, was sufficient to authorize a rational trier of fact to find Williams guilty beyond a reasonable doubt of the offenses for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The State presented three witnesses to establish the existence of prior difficulties between Williams and Patillo. One of those witnesses was permitted to testify only to her personal observation of difficulties between Williams and Patillo, but the other two were permitted to testify about declarations by Patillo concerning Williams's abuse of her. Williams contends the trial court erred in permitting the hearsay testimony to be admitted under the necessity exception to the hearsay rule, and we agree.

> The two prerequisites for the admission of hearsay because of necessity are: a finding that the hearsay is necessary, and a finding that the declarant's hearsay statement is surrounded by particularized guarantees of trustworthiness. [Cit.] . . . [T]he hearsay declarant's death or unavailability, in and of itself, does not satisfy the "necessary" component. . . . To satisfy the requirement that the hearsay be "necessary," in addition to showing the hearsay declarant's unavailability due to death, privilege, or other reason, the proponent of the hearsay must also show "that the statement is relevant to a material fact and that the statement is more probative on that material fact than other evidence that may be procured and offered." [Cit.] . . . After the completion of the three-pronged examination of whether the hearsay is "necessary," the trial court must then examine whether the hearsay statement is surrounded by "particularized guarantees of trustworthiness," that is, whether there is "something present which the law considers a sub-

stitute for the oath of the declarant and his cross examination by the party against whom the hearsay is offered." [Cit.] Absent a showing of particular guarantees of trustworthiness or indicia of reliability, the proffered hearsay must be excluded from evidence. [Cit.]

*Clark v. State*, 271 Ga. 6, 9-10 (5) (515 SE2d 155) (1999).

The first of the three prongs of the "necessary" component of the showing required for the admission of hearsay testimony under the necessity exception, unavailability, was shown by the declarant's death. The second prong, relevance, was shown because such prior difficulties "are evidence of the relationship between the two and may show the defendant's motive, intent, and bent of mind in committing the act for which he is being tried. [Cit.]" *Graham v. State*, 274 Ga. 696, 698 (2) (558 SE2d 395) (2002). Regarding the third prong of the "necessary" component, the requirement the proffered evidence be more probative of the fact for which it is offered than other evidence which may be procured and offered, the trial court made such a finding as to one hearsay witness, but not as to the other. Our review of the testimony at trial persuades us, however, the trial court's finding the hearsay would be more probative than other evidence is not supported by the testimony of the hearsay witnesses and the third prior difficulty witness. Two of the prior difficulty witnesses testified about events they personally witnessed in which Williams used or threatened to use a firearm in an altercation involving Patillo. That testimony was more probative than the hearsay on the issues of Williams's prior difficulties with Patillo, especially since those events involved a firearm, the very method by which Williams killed Patillo. See *Phillips v. State*, 275 Ga. 595 (4) (571 SE2d 361) (2002) (hearsay statement of eyewitness no more probative on the issues discussed therein than testimony of other eyewitnesses). Compare *Watkins v. State*, 276 Ga. 578 (2) (581 SE2d 23) (2003) (hearsay statement constituted only evidence appellant had previously shot at the victim in his truck). Thus, the trial court's conclusion that the hearsay evidence at issue met the requirements of the "necessary" prong of the necessity exception was incorrect and rendered the admission of the hearsay testimony error.

However, we do not find that error to require reversal. In light of overwhelming evidence of Williams's commission of the murder, we conclude that it is highly probable that the admission of the hearsay testimony did not contribute to the verdict. Thus, it was not harmful error. *Heard v. State*, 274 Ga. 196 (6) (552 SE2d 818) (2001). Having concluded that the totality of the evidence was such as to render harmless the trial court's admission of hearsay, we need not address the second prong of the necessity exception, particularized guaran-

tees of trustworthiness.

3. After the conclusion of evidence, the trial court explained to the jury the usual order of events, hearing closing argument from the attorneys and then receiving instructions from the court, would be reversed in this case with the consent of the parties. Defense counsel had announced to the court immediately prior to the court's explanation that he had discussed the order of events with Williams and Williams agreed to the reversal of the usual order. Williams now argues the reversal of order was reversible error.

In *Griffith v. State*, 264 Ga. 326, 327 (2) (444 SE2d 794) (1994), this Court held the provision in OCGA § 5-5-24 (b) that the court "shall instruct the jury after the arguments are completed," is mandatory and requires a complete charge be given after closing arguments are completed. However, the error does not always require reversal, as is demonstrated by the holding in *Griffith* that it was highly unlikely the failure to do so contributed to the verdict. Id. More recently, the Court of Appeals applied to the issue the principle that a party cannot complain of error caused by his own conduct, and rejected a claim of error on the ground counsel consented to the reversal of order. *McConnell v. State*, 263 Ga. App. 686 (2) (589 SE2d 271) (2003). Since the record in the present case shows counsel consented, we conclude that consent bars assertion of the issue on appeal.

Williams also complains the trial court allowed the jury to begin deliberations prior to closing argument, but the record does not support that assertion. At the conclusion of its instructions, and prior to closing argument, the trial court sent the jury to the jury room with direction only to select a foreperson. After what the transcript describes as a brief delay, the trial court brought the jury back to the courtroom and informed the jurors they would hear closing arguments and would then be returned to the jury room to begin deliberations. There being no indication in the record that the jury was instructed to begin deliberations prior to closing argument or that premature deliberations actually occurred, we find no merit in Williams's assertion of error.

4. Williams contends the trial court erred in permitting an investigator to remain in the courtroom after invocation of the rule of sequestration and in failing to require the witness to testify first. Where, as here,

> [t]he prosecutor stated that he needed him for presentation of the case and that to require him to testify first would interfere with the orderly presentation of the case[,] . . . we have found the exception of a witness from the rule of sequestration is within the discretion of the trial judge.

[Cit.] We find no abuse of discretion and there is no merit to this enumeration of error.

*Blalock v. State*, 250 Ga. 441 (1) (298 SE2d 477) (1983).

5. Williams also contends the trial court violated the rule of sequestration by permitting the three prior difficulty witnesses to remain in the courtroom together while the court instructed each of them on the limitation to be placed on their testimony. The rule of sequestration provides each "party shall have the right to have the witnesses of the other party examined out of the hearing of each other." OCGA § 24-9-61. In the present case, the three prior difficulty witnesses were examined out of the hearing of each other, both preliminarily for the trial court to rule on the scope and admissibility of their testimony, and before the jury. They were together only for the trial court's ruling regarding the permissible scope of their testimony. "The trial judge is vested with broad discretionary powers in administering the rule of sequestration, which will not be controlled unless manifestly abused." *Watts v. State*, 239 Ga. 725, 731 (238 SE2d 894) (1977). Since the witnesses were examined separately, we conclude the trial court's discretion was not abused.

6. Finally, Williams contends he was denied effective assistance of counsel, asserting eight instances of ineffectiveness. We find no merit in his contention for the reasons that follow.

> In order to establish ineffectiveness of trial counsel . . . , appellant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. There is a strong presumption that the performance of trial counsel "falls within the wide range of reasonable professional assistance. . . ." [Cit.] The reasonableness of the conduct is viewed at the time of trial and under the circumstances of the case. [Cit.] In reviewing a lower court's determination of a claim of ineffective assistance of counsel, we give deference to the trial court's factual findings, which are upheld on appeal unless clearly erroneous; however, we review the lower court's legal conclusions de novo. [Cit.]

*Washington v. State*, 276 Ga. 655, 658 (3) (581 SE2d 518) (2003).

(a) Williams asserts trial counsel's failure to object to or move in limine to exclude testimony he "always" carried a gun deprived him of effective assistance of counsel because the testimony constituted bad character evidence. However, "[g]un ownership and the custom of carrying a gun do not, by themselves, impute bad character." *Davis v. State*, 272 Ga. 327, 329 (2) (528 SE2d 800) (2000). Since the evidence does not have the prejudicial effect attributed to it by Wil-

liams, its admission does not meet the prejudice prong of *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). "Since an appellant claiming ineffective assistance of counsel must show both deficient performance and actual prejudice stemming from that deficiency, an insufficient showing on either of these prongs relieves the reviewing court of the need to address the other prong. [Cit.]" *Cain v. State*, 277 Ga. 309, 311 (4) (588 SE2d 707) (2003). Accordingly, no error appears in the trial court's rejection of this claim of ineffective assistance of counsel.

(b) Williams asserts trial counsel was ineffective in failing to object when the State asked a police officer whether the "stories" Williams told made sense in light of other evidence. Looking again at the prejudice prong, we conclude the question and its negative response were not prejudicial to Williams in light of his own testimony in which he referred to his several different statements to the police as "stories," acknowledged his several statements around the time of the shooting were inconsistent, and admitted on cross-examination they were lies.

(c) Contending trial counsel did not explain that giving jury instructions before closing arguments is a reversal of usual procedure, Williams contends trial counsel was ineffective in failing to object to the improper procedure and in failing to explain the situation to him. In contrast to Williams's testimony at the motion for new trial hearing that trial counsel did not explain that the order of argument and instruction was being reversed, trial counsel stated he did explain the process to Williams before Williams agreed to it. The trial court expressly found trial counsel's version of the events more credible than Williams's. Appellate counsel now contends trial counsel's explanation cannot be credited because counsel was not sworn as a witness, but since appellate counsel was offered a choice at the hearing whether to swear trial counsel and decided not to insist on an oath before examining trial counsel, Williams will not be heard to complain the testimony lacks probative value because it was unsworn. See *McConnell v. State*, supra, 263 Ga. 686 (2).

(d) Williams also points to trial counsel's failure to seek a change of venue on the ground of pretrial publicity as ineffective assistance of counsel. The only pretrial publicity shown in the record was a single newspaper article published the week before trial. Williams does not point to anything incorrect or inflammatory in the article and our review revealed nothing incorrect or inflammatory. Trial counsel testified the issue was addressed during voir dire but he did not recall any jurors being dismissed because of previously formed opinions. Under those circumstances, there being no evidence the trial's setting was inherently prejudicial or the jury selection process showed actual prejudice to a degree that rendered a fair trial impossible, Wil-

liams has not shown the failure to seek a change of venue constituted ineffective assistance of counsel. *Pittman v. State,* 274 Ga. 260 (5) (553 SE2d 616) (2001).

(e) In a related argument, Williams asserts trial counsel's failure to have voir dire recorded prevented him from showing potential jurors had been tainted by pretrial publicity. However, he makes no assertion there were jurors dismissed, but complains only he cannot now make a showing on that issue. In rejecting a similarly vague assertion of ineffective assistance of counsel for failing to have voir dire recorded, the Court of Appeals noted "a general unspecified hope of reversible error during voir dire does not win a new trial on the ground a record should have been made so as to accommodate a search for error now buried in unrecorded history." *Primas v. State,* 231 Ga. App. 861, 863 (2) (501 SE2d 28) (1998). We agree.

(f) Although Williams raises in general terms three more instances of alleged ineffectiveness,[2] he does not enunciate how any of them satisfies either the deficiency or prejudice prongs of *Strickland v. Washington,* supra, and we do not see how any of them demonstrate ineffectiveness of trial counsel. That being so, we cannot say he has borne his burden of showing he was denied effective assistance of counsel. See *Rickman v. State,* 277 Ga. 277 (4) (587 SE2d 596) (2003).

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 24, 2004.

*Maria Murcier-Ashley,* for appellant.

*J. David Miller,* District Attorney, *Andrew W. Pope, Brian A. McDaniel,* Assistant District Attorneys, *Thurbert E. Baker,* Attorney General, *Jason C. Fisher,* Assistant Attorney General, for appellee.

---

[2] Conceding in closing argument that Williams could be found negligent in a civil trial; eliciting from the medical examiner that the cause of death, as opposed to the manner of death, was homicide; and failing to prevent the State from making reference to the content of a pretrial statement the trial court had ordered suppressed.