## A09A2384. PREVAL v. THE STATE.
### (692 SE2d 51)

BARNES, Judge.

Silvano Preval was convicted of trafficking in marijuana and manufacturing marijuana, and sentenced to a total of 30 years, 15 to serve in prison and 15 on probation. He argues on appeal that the evidence was insufficient; that the trial court erred in allowing hearsay evidence over objection and should have charged the jury sua sponte on venue; and that his two convictions should merge. Because his conviction for violating OCGA § 16-13-30 (j) (1) should have merged with his trafficking conviction, we vacate both sentences and remand for resentencing on the trafficking conviction. We otherwise affirm.

1. We view the evidence on appeal in the light most favorable to the verdict, and no longer presume the defendant is innocent. We do not weigh the evidence or decide the witnesses' credibility, but only determine if the evidence is sufficient to sustain the convictions. *Campbell v. State*, 278 Ga. 839, 840 (1) (607 SE2d 565) (2005); *Taylor v. State*, 226 Ga. App. 254, 255 (485 SE2d 830) (1997). We construe the evidence and all reasonable inferences from the evidence most strongly in favor of the jury's verdict. *Sims v. State*, 226 Ga. App. 116 (1) (486 SE2d 365) (1997).

Viewed in that light, the evidence at trial established that on February 13, 2007, law enforcement officers executed a search warrant on a house in Henry County. When officers breached the front door, the smell of raw marijuana was very heavy inside the house. Members of the local SWAT team found Preval hiding in a crawl space in a room over the garage, and found $9,700 in another

crawl space. They found sodium halide lamps, gallons of fertilizer, and other supplies used to grow plants in another room, and in the basement they discovered a sophisticated set-up of marijuana plants growing hydroponically.

A narcotics division detective testified that the basement room was covered in reflective insulation with rows of buckets containing a total of 94 young marijuana plants. The plants were growing in a mixture of perlite and water, with hoses connecting the buckets and leading to a chemical bin that recirculated the water and nutrients. Oscillating fans blew across the plants to make their stems sturdier and a separate electrical room included controls for the sodium halide lamps over the plants. Electricity had been diverted to the basement from the incoming power lines before they reached the meter so the power consumption would appear normal, and a separate air conditioning unit cooled only the basement. Law enforcement agents harvested the marijuana plants, which weighed a total of 17.48 pounds.

The house and utilities were in the name of Preval's co-defendant Gisela Garcia. Garcia, who pled guilty to manufacturing marijuana and received five years' probation, testified through an interpreter[1] that she had known Preval for about ten years, and that it was his idea to buy the house in her name and grow marijuana in it. Garcia said she did not want to participate but her husband, co-defendant Hector Rosabal, made her do so. She said Preval and a third man planted the first crop and Preval brought fertilizer and other supplies to the house from Miami, where they all lived previously. The third man lived at the house in the beginning and tended the crop. The first crop did not do well but the second crop yielded ten pounds of marijuana, which sold for $2,100 per pound. Preval and Rosabal split the money, giving Garcia money for expenses when needed. The third man moved out of the house, and Preval and Rosabal planted and tended the third crop, which was only 20 days old when the police raided the house.

Garcia's husband Rosabal pled guilty to marijuana trafficking and was sentenced to fifteen years, to serve ten in confinement and five on probation. He testified that buying the house and growing marijuana there was Garcia and Preval's idea. Preval was the one who knew how to set up the system, and helped plant three crops, the last one being the one seized by the police. Preval brought the supplies to the house from Miami, and he and Garcia handled the money received from selling the drugs, Rosabal testified.

---

[1] An interpreter also translated the English testimony and proceedings into Spanish for Preval.

Preval contends the trial court erred in overruling his hearsay objection to Garcia's testimony that Preval had started and tended the plants at first, because these events took place before Garcia moved to the house in Henry County and therefore she had no personal knowledge about them. Without this testimony, and because nothing corroborated his co-defendants' testimony implicating him, he asserts, the evidence was insufficient because the State only showed he was present at the house when the warrant was executed.

Preval objected to Garcia's testimony that he started the plants because he did not "know how she could have personal knowledge, if she doesn't live there and she's in Florida." In overruling the objection, the judge responded that the witness could testify to her knowledge and then Preval could cross-examine her on that question. The witness answered that it was true that most of the time she was not in the house but she knew about it from asking her husband Rosabal and from another man living there because the house was in her name "so [she] had to ask who was in the house." After additional questioning, Preval objected again when the prosecution asked Garcia if someone else tended the plants when the third man moved out and she answered yes, Preval. Preval protested that if Garcia was not living in the house at the time, her testimony about who was tending the plants then would have to be hearsay. The trial court overruled the objection again, ruling that considering the language barrier Preval could handle this issue best on cross-examination.

"Even assuming the testimony constituted inadmissible hearsay, its admission does not constitute reversible error unless appellant suffered harm. [Cit.]" *Heard v. State*, 274 Ga. 196, 199 (6) (552 SE2d 818) (2001). In addition to testifying that Preval was involved in growing the marijuana before she moved to the house from Miami, Garcia also testified that she moved into the house in August 2001 and that in January 2002 Preval helped plant and tend the third crop, the one seized by police on February 13, 2002. Garcia's husband Rosabal also testified that he and Preval planted and tended this last crop. Because evidence Preval was involved in manufacturing the third crop is sufficient to sustain his conviction, even if the admission of Garcia's testimony regarding Preval's involvement with the first two crops is error, it is harmless. *Daniels v. State*, 238 Ga. App. 511, 521 (3) (519 SE2d 269) (1999).

Preval also contends that his co-defendants' testimony against him was not corroborated, and his mere presence in the house without proof he participated in the crime is insufficient to support his conviction. A defendant may not be convicted of a felony on the uncorroborated testimony of an accomplice, although "[s]light evidence from an extraneous source identifying the accused as a

participator in the criminal act" may sufficiently corroborate an accomplice's testimony. *Finley v. State*, 252 Ga. App. 66, 67 (2) (555 SE2d 523) (2001). In this case, although co-defendants Garcia and Rosabal both said the other helped plan the operation, they both agreed that Preval also planned it, that he was the party with the knowledge and skills required to grow the plants, and he helped plant and tend the third crop. "The accomplices amply corroborated each other on this point." *Blalock v. State*, 250 Ga. 441, 443 (4) (298 SE2d 477) (1983); *Arnold v. State*, 243 Ga. App. 118, 121 (1) (532 SE2d 458) (2000).

*Brookshire v. State*, 230 Ga. App. 418 (496 SE2d 757) (1998), is not binding precedent because one judge on the panel concurred specially. Court of Appeals Rule 33. Additionally, in *Brookshire*, the accomplices' statements did not corroborate each other; one said he was going to meet the defendant to give her the drugs and the other accomplice only testified that the first accomplice said he was going to meet the defendant, without repeating a reason for the meeting.

Considering the evidence that Preval was hiding in a crawl space inside a house that reeked of raw marijuana and contained 94 plants weighing 17.41 pounds growing in the basement, along with the testimony of his two co-defendants that the operation was his idea, he was the only one who knew how to grow the marijuana indoors, and he helped plant and tend the third crop, the evidence was sufficient for a rational trier of fact to find Preval guilty beyond a reasonable doubt of manufacturing and trafficking in marijuana. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Preval argues the trial court erred in failing to charge the jury sua sponte that the State had to prove venue beyond a reasonable doubt. In the indictment, the grand jury of Henry County accused Preval of possessing more than ten pounds of marijuana and of manufacturing marijuana at a particular street address in McDonough, Georgia, "the location being an essential averment to this indictment." Preval argues that the indictment set out two possible venues: Henry County and the address in McDonough, and without being instructed properly, "the jury may have thought that the State only needed to prove beyond a reasonable doubt that the offenses occurred" at the address in McDonough, not that the offenses occurred in Henry County.

Venue is an essential element in proving that a defendant is guilty of the crime charged, and must be proved by the prosecution to the jury beyond a reasonable doubt. *Jones v. State*, 272 Ga. 900, 901 (2) (537 SE2d 80) (2000). Following a number of cases in which the State failed to present direct evidence of venue even though the location of the crime was not disputed, our Supreme Court suggested that "one way to encourage prosecutors to make sure they have

proven venue and to alert the juries to their role in determining venue is to instruct juries that they must find venue beyond a reasonable doubt." *Lynn v. State*, 275 Ga. 288, 290 (3) (565 SE2d 800) (2002); see also *Graham v. State*, 275 Ga. 290, 293 (3) (565 SE2d 467) (2002). In *Lynn*, however, the State conceded that it failed to prove venue and the trial court erred in denying the defendant's motion for a directed verdict of acquittal. In *Graham*, the trial court took judicial notice that a city was located within a county but never told the jury, so there was no evidence proving venue beyond a reasonable doubt.

Unlike those two cases, here the State introduced direct evidence of venue. The narcotics division detective who participated in executing the search warrant testified twice that the house containing the marijuana where Preval was hiding was located in Henry County. Further, the court charged the jury that the State had the burden of proving beyond a reasonable doubt every material allegation of the indictment and every essential element of the crime charged. Contrary to Preval's argument, evidence that the crime occurred at a particular address in the city of McDonough does not contradict evidence that the crime occurred in Henry County. Further, the "plain error" rule does not apply here, because the State proved venue beyond a reasonable doubt. Accordingly, we find no merit to this enumeration.

3. Finally, Preval argues that the trial court should have merged his two convictions for trafficking and manufacturing marijuana. Preval was indicted in Count 1 for trafficking marijuana by "unlawfully and knowingly possessing more than ten pounds of marijuana," and in Count 2 for violating the Georgia Controlled Substances Act by "unlawfully manufacturing marijuana." The State argues on appeal that Count 1 is based on OCGA § 16-13-31 (c),[2] and Count 2 is based on OCGA § 16-13-30 (j) (1).[3]

An accused may be prosecuted for more than one crime if his conduct may establish the commission of more than one crime, but multiple convictions arising from the same conduct are prohibited if one crime is "included in the other." OCGA § 16-1-7 (a) (1). To determine whether one offense is included in another under either OCGA § 16-1-7 (a) (1) or OCGA § 16-1-6 (1),[4] the Supreme Court of

---

[2] "Any person who knowingly sells, manufactures, grows, delivers, brings into this state, or has possession of a quantity of marijuana exceeding 10 pounds commits the offense of trafficking in marijuana."

[3] "It is unlawful for any person to possess, have under his control, manufacture, deliver, distribute, dispense, administer, purchase, sell, or possess with intent to distribute marijuana."

[4] An accused may be convicted of a lesser included offense if it is established by proof of

Georgia disapproved the "actual evidence" test and adopted the "required evidence" test in *Drinkard v. Walker*, 281 Ga. 211, 212-213 (636 SE2d 530) (2006). If the same act or transaction violates two distinct statutory provisions, "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." (Citation omitted.) Id. at 215. Preval argues that the statutes under which he was charged both prohibit the possession or manufacture of marijuana with the intent to distribute and only differ in the amount of weight required to prove trafficking under OCGA § 16-13-31 (c). We agree.

We have held that the amount of drugs required to sustain a trafficking charge is large enough to infer the "intent to distribute." See *Brown v. State*, 181 Ga. App. 795, 797 (354 SE2d 3) (1987). The only element needed to prove trafficking under OCGA § 16-13-31 (c), in addition to the elements required by OCGA § 16-13-30 (j) (1), is that the quantity of marijuana possessed be more than ten pounds. Stated another way, OCGA § 16-13-30 (j) (1) does not require the proof of any fact which OCGA § 16-13-31 (c) does not require.

While the State charged Preval with possession in one count and manufacturing in the other, the offenses merge because both counts arose from the same set of facts, and each provision does not require proof of a fact which the other does not. See *Jackson v. State*, 295 Ga. App. 427, 432 (4) (671 SE2d 902) (2009); see also *Bryan v. State*, 271 Ga. App. 60, 64-65 (4) (608 SE2d 648) (2004), and *Goldsby v. State*, 273 Ga. App. 523, 529 (6) (615 SE2d 592) (2005) (both pre-*Drinkard*, holding that manufacturing and trafficking offenses merged because they arose from single quantity of drug).[5] Further, the holding in *Galbreath v. State*, 213 Ga. App. 80 (443 SE2d 664) (1994), that possession of marijuana was not a necessary element of the crime of growing marijuana, was decided under the pre-*Drinkard* "actual evidence" test and addressed whether possession should have been charged as a lesser included offense of manufacturing marijuana. In *Hunt v. State*, 222 Ga. App. 66, 69 (2) (473 SE2d 157) (1996), which also applied the "actual evidence" test, the possession of marijuana and manufacturing marijuana counts did not merge because evidence of harvested bales of marijuana on one location established possession and evidence of living marijuana plants in another location 'established the manufacturing count.

Here, Preval was indicted in Count 1 for trafficking by possessing more than ten pounds of marijuana at the house in McDonough,

---

the same or less than all the facts than required to prove the charged crime.

[5] We reached similar results in *Womble v. State*, 290 Ga. App. 768, 771 (3) (660 SE2d 848) (2008), although the analysis differed slightly.

and in Count 2 for violating the Controlled Substances Act by manufacturing marijuana at the same location. The State introduced evidence that 17.54 pounds of marijuana had been growing at the house, evidence used to show that Preval both possessed a trafficking weight of marijuana and manufactured marijuana. Because OCGA § 16-13-30 (j) (1) (Count 2) contains no unique elements not satisfied by OCGA § 16-13-31 (c) (the Count 1 trafficking offense), Count 2 merges into Count 1. See *Jackson v. State*, supra, 295 Ga. App. at 432.

Accordingly, the judgment of conviction entered on the guilty verdict for Count 2 must be reversed and the sentence imposed as to that count vacated. Because the sentence imposed on the conviction for Count 1 was concurrent with the vacated sentence, we likewise vacate the sentence on Count 1 and remand for resentencing on that conviction.

*Judgment affirmed in part and reversed in part. Sentences on Counts 1 and 2 vacated, and case remanded for resentencing on Count 1. Miller, C. J., and Andrews, P. J., concur.*

DECIDED MARCH 10, 2010.

*Sheueli C. Wang*, for appellant.

*Tommy K. Floyd, District Attorney, Alicia C. Gant, Thomas L. Williams, Assistant District Attorneys*, for appellee.

