**SECOND DIVISION**
**DOYLE, C. J.,**
**MILLER, P. J., and REESE, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 16, 2017**

# In the Court of Appeals of Georgia

A17A0311. WOODS v. THE STATE.

REESE, Judge.

A Glynn County jury found Ralph Woods, Sr., guilty beyond a reasonable doubt of voluntary manslaughter, OCGA § 16-5-2 (a), and simple assault, OCGA § 16-5-20 (a). He appeals from the denial of his motion for a new trial, contending that the evidence was insufficient to support his convictions, that he received ineffective assistance of counsel, and that he was denied his constitutional rights to due process and a speedy trial. For the reasons set forth, infra, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record reveals the following facts. On December 1, 2007, John Mitchell (hereinafter, "the victim") was

---

[1] See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

in "The Cut," an area of Brunswick where drugs are often bought and consumed, when he encountered Bernard Robinson.[2] During the encounter, the victim hit Robinson in the head with a brick, robbed him, and ran away. Robinson, the Appellant, and other men chased the victim. Upon catching the victim, the men jointly beat him severely with their hands and feet, the Appellant stabbed him, and Robinson shot him. The victim died from his injuries.

The State filed an indictment jointly charging the Appellant, Robinson, and two accomplices, Curtis Grant and Keith Williams, with murder, felony murder, and voluntary manslaughter, as well as counts of aggravated assault against each of them individually. The voluntary manslaughter count alleged that the men caused the death of the victim

> under circumstances which would otherwise be murder as the sole result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person, while acting in concert with another to apprehend, detain and assault [the victim], by shooting him with a handgun, by hitting him with a

---

[2] Additional facts are provided in the Supreme Court of Georgia's opinion affirming Robinson's murder conviction. See *Robinson v. State*, 299 Ga. 648 (791 SE2d 13) (2016).

2

handgun, by stabbing him with a knife, and by repeatedly hitting him with their hands and feet[.][3]

The Appellant and Robinson were tried together and, in addition to other witnesses, both Williams and Grant testified against them.[4] The jury found the Appellant guilty of committing voluntary manslaughter and simple assault, as a lesser included offense of aggravated assault.[5] The trial court denied the Appellant's motion for new trial, and this appeal followed.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence

---

[3] See OCGA § 16-5-2 (a) ("A person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person; however, if there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, of which the jury in all cases shall be the judge, the killing shall be attributed to deliberate revenge and be punished as murder.").

[4] Prior to the Appellant's trial, the State dismissed the felony charges against Williams in exchange for his guilty plea to simple assault. As for Grant, at the time of trial, he was still facing the murder and other charges arising from the victim's death.

[5] The jury convicted Robinson of malice murder and possession of a firearm by a convicted felon, and the Supreme Court of Georgia affirmed Robinson's convictions. See *Robinson*, 299 Ga. at 648-651.

3

is sufficient under the standard of *Jackson v. Virginia*,[6] and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.[7]

The standard of *Jackson v. Virginia* is met if the evidence is sufficient for any rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crime charged.[8] With these guiding principles in mind, we turn now to the Appellant's specific claims of error.

1. The Appellant contends that the State presented insufficient evidence to support his convictions, specifically, that the only evidence that he stabbed the victim and otherwise participated in the murder was the testimony of two of his accomplices, Williams and Grant. He relies on former OCGA § 24-4-8,[9] which provided that the

---

[6] 443 U. S. at 319 (III) (B).

[7] *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004) (citations omitted).

[8] *Clark v. State*, 275 Ga. 220, 221 (1) (564 SE2d 191) (2002).

[9] In 2011, the Georgia General Assembly repealed the existing Evidence Code in its entirety and replaced it with a new Evidence Code, the provisions of which became effective on January 1, 2013. See Ga. L. 2011, p. 99, §§ 1, 101. Because the Appellant's trial took place in August 2010, the former Evidence Code applies.

testimony of a single witness was generally sufficient to establish a fact, except in felony cases where the only witness was an accomplice.[10] Under the statute, however, evidence of "corroborating circumstances may dispense with the necessity for the testimony of a second witness[.]"[11] In order for evidence to corroborate an accomplice's testimony, it had to be "independent of the accomplice's testimony," had to "directly connect the defendant with the crimes or lead to the inference of the defendant's guilt," and had to "do more than merely cast a grave suspicion of guilt on the defendant."[12] Still, "[s]light evidence from an extraneous source identifying the accused as a participant in the criminal act [was] sufficient corroboration of the accomplice to support a verdict."[13] Further, circumstantial evidence could be used to

---

[10] See *Young v. State*, 291 Ga. 627, 629 (2) (732 SE2d 269) (2012); *Jordan v. State*, 278 Ga. App. 126, 128 (1) (628 SE2d 221) (2006).

[11] *Young*, 291 Ga. at 629 (2) (citation and punctuation omitted).

[12] Id. (citation omitted).

[13] Id. (citation and punctuation omitted).

provide the necessary corroboration.[14] And, significantly, the testimony of one accomplice could corroborate the testimony of another accomplice.[15]

In this case, Williams testified that the Appellant was in "The Cut" when the victim struck Robinson's head, the Appellant and other men chased the victim, and the Appellant participated in the beating of the victim. Williams also testified that, after the assault, the Appellant told him that he (the Appellant) had "stabbed [the victim] a couple times."

Similarly, Grant testified that, on the day of the murder, he saw the Appellant in "The Cut" when the victim attacked Robinson. Immediately after the attack, Grant heard Robinson say to the Appellant, "Ralph, catch him for me[,]" referring to the victim. The Appellant, Grant, and others chased the victim through the neighborhood. A few minutes later, Grant saw the victim lying on the ground with the Appellant and others beating and kicking him. Grant saw Robinson shoot the victim, and then he saw the Appellant stabbing the victim in the back with a long, "Army dagger[-]like knife." According to Grant, the Appellant must have gotten the knife from a nearby

---

[14] See *Blalock v. State*, 250 Ga. 441, 443 (4) (298 SE2d 477) (1983).

[15] Id. The record shows that the trial court instructed the jury on the testimony of an accomplice and the need for corroborating evidence.

abandoned car, where Grant knew that a similar knife had been hidden. Grant testified that he was only three feet away when the Appellant stabbed the victim.

The accomplices' testimony was further corroborated by that of an eyewitness who had known the Appellant for years. He testified that, on the night at issue, he saw the Appellant and others chase the victim, watched as the Appellant beat up the victim with Robinson and Grant, and saw Robinson shoot the victim. According to the eyewitness, the Appellant used a "stabbing" motion as he repeatedly struck the victim, although the witness did not actually see a knife in the Appellant's hand at that time. And, after the beating was over, the witness saw blood on the Appellant's clothing.

Given this evidence, we find that the testimony of the Appellant's accomplices about his participation in the crimes was adequately corroborated, and that the totality of the evidence, when viewed in the light most favorable to the jury's verdict, was sufficient for the jury to find him guilty beyond a reasonable doubt of the crimes charged.[16]

---

[16] See *Preval v. State*, 302 Ga. App. 785, 787-788 (1) (692 SE2d 51) (2010) (The evidence was sufficient to support the defendant's convictions, because the accomplices amply corroborated each other's testimony that the defendant planned and participated in the crimes.); cf. *Johnson v. State*, 277 Ga. App. 499, 504-505 (2) (b) (627 SE2d 116) (2006) (reversing convictions for armed robbery, kidnapping, and

2. The Appellant contends that he received ineffective assistance when his trial counsel failed to request a jury instruction on involuntary manslaughter as a lesser included offense to the voluntary manslaughter charge.[17]

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different.[18] The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. [The appellate court accepts] the trial court's factual findings and credibility

---

related crimes because the evidence showed that the defendant was merely present with the co-defendants before and after the crimes, and neither co-defendant implicated the defendant in the crimes, there were no eyewitnesses who saw the defendant participating in the crimes, there was no evidence linking the defendant to the weapon used in the crimes, and there was no evidence that the defendant received any of the proceeds from the armed robbery).

[17] See OCGA § 16-5-3 (a) ("[A] person commits the offense of involuntary manslaughter in the commission of an unlawful act when he causes the death of another human being without any intention to do so by the commission of an unlawful act other than a felony."); see also OCGA §§ 16-1-6; 16-1-7 (lesser included offenses).

[18] *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

determinations unless clearly erroneous, but it independently appl[ies] the legal principles to the facts.[19]

"Since an appellant claiming ineffective assistance of counsel must show both deficient performance and actual prejudice stemming from that deficiency, an insufficient showing on either of these prongs relieves the reviewing court of the need to address the other prong."[20]

In this case, the Appellant's trial counsel testified that he asserted an alibi defense at trial because the Appellant had consistently insisted that he had not been present during the attack on the victim, but, instead, was at a cookout. In support of that alibi defense, trial counsel vigorously cross-examined Williams and Grant – the two accomplices who testified against the Appellant, as well as the other witnesses. He also argued to the jury that the accomplices were not credible witnesses; that they were lying in order to implicate the Appellant and get a lighter sentence for themselves; and that it was Grant, not the Appellant, who had actually stabbed the victim.

---

[19] *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003) (citations and punctuation omitted).

[20] *Williams v. State*, 277 Ga. 853, 858 (6) (a) (596 SE2d 597) (2004) (citations and punctuation omitted).

Under such circumstances, a request for a jury instruction on involuntary manslaughter, as a lesser included offense to voluntary manslaughter, would have been completely inconsistent with the Appellant's alibi defense.[21] We conclude that it was reasonable for trial counsel "to rely on [the Appellant's] claim of complete innocence, and to defend [him] by attacking the credibility of the [accomplices] whose testimony implicated him in the crimes."[22]

This Court "evaluates counsel's performance from counsel's perspective at the time of trial. As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel."[23] Under the

---

[21] See *Sparks v. State*, 277 Ga. 72, 74 (3) (586 SE2d 645) (2003); see also *Gibbs v. State*, 257 Ga. App. 38, 39 (2) (570 SE2d 360) (2002) (A jury instruction on a lesser included offense is not required when "the evidence shows either the commission of the completed offense as charged, or the commission of no offense[.]") (punctuation and footnote omitted).

[22] *Sparks*, 277 Ga. at 74-75 (3). See *Ingram v. State*, 317 Ga. App. 606, 608 (2) (732 SE2d 456) (2012) (Because it was reasonable for trial counsel to decide, based upon his review of the evidence, to pursue an "all-or-nothing" defense strategy instead of requesting a jury instruction on a lesser included offense, the Court found no merit in the Appellant's ineffective assistance claim.).

[23] *Grier v. State*, 273 Ga. 363, 365 (4) (541 SE2d 369) (2001) (citations and punctuation omitted). See *Ingram*, 317 Ga. App. at 608 (2) ("Decisions as to which charges will be requested generally fall within the realm of trial tactics and strategy.") (citation and punctuation omitted).

circumstances presented, we conclude that trial counsel's failure to request a jury instruction that was inconsistent with the complete defense asserted by his client did not constitute ineffective assistance.[24]

3. The Appellant contends that the trial court violated his right to a speedy trial and that, as a result, his defense was "fatally handicapped." The Supreme Court of Georgia, however, has already decided this issue adversely to the Appellant in an appeal filed by him and his co-defendant, Robinson, from the denial of their motions to dismiss the indictment. In *Robinson v. State*,[25] the Court concluded that the defendants could not prevail on their constitutional speedy trial claims because they had failed to show any harm, explaining that "no witnesses have died or disappeared; there is no evidence that witnesses have lost their memories; and the defense strategy remained unchanged."[26] The Appellant has failed to present evidence of any

---

[24] See *Sparks*, 277 Ga. at 74-75 (3); see also *Ellis v. State*, 316 Ga. App. 352, 365 (8) (d) (729 SE2d 492) (2012) ("[T]he failure to request a jury instruction on a lesser included offense cannot support a claim of ineffective assistance where . . . the evidence does not reasonably raise the issue that [the defendant] may be guilty *only* of the lesser crimes.") (citations omitted; emphasis in original).

[25] 287 Ga. 265 (695 SE2d 201) (2010).

[26] Id. at 269 (1) (d).

additional prejudice to his defense that did not exist before the Supreme Court issued its ruling.[27] Consequently, this enumeration lacks merit.

4. The Appellant claims that he was improperly denied his Sixth Amendment right to "conflict-free" counsel.[28] He argues that his trial counsel was not appointed to represent him until nine months after his arrest and, as a result of that delay, an "essential" alibi witness could not be located and called to testify in his defense at trial.

The record shows, however, that a public defender was appointed for the Appellant in the "early spring" of 2008, about three months after the Appellant's January 2008 arrest. The public defender testified at the motion for new trial hearing that the Appellant had given him the "street nicknames" and phone numbers of two potential alibi witnesses and that he had diligently attempted to find and interview

---

[27] Notably, the Appellant's trial counsel represented the Appellant in the appeal to the Supreme Court, and he presented the same argument then that the Appellant has raised in the motion for new trial and in the instant appeal, i.e., that the Appellant's lack of representation by counsel following his arrest hampered the effort to find and interview potential witnesses who might testify favorably on his behalf at trial.

[28] See *Robinson*, 287 Ga. at 265 (discussing the conflict-of-interest issue that arose in the Circuit Defender's Office following the arrest of the Appellant and his accomplices).

them, but was unsuccessful. The public defender stopped representing the Appellant in August 2008, and a new attorney was appointed in October 2008 and continued to represent the Appellant through the trial. During the motion for new trial hearing, trial counsel testified that he had attempted to find a specific potential alibi witness, but was unable to do so. Neither the Appellant, nor either of his appointed counsel, identified the alibi witnesses who were the subject of their searches, and the Appellant has not identified the "essential" alibi witness to whom he refers in his appellate brief.

The record shows, however, that shortly before the Appellant's trial, his trial counsel filed a notice of intent to present an alibi defense, identifying one potential witness named "Beatrice McCray."[29] The notice also stated that counsel had been

---

[29] See OCGA § 17-16-5 (a) ("Upon written demand by the prosecuting attorney . . . , the defendant shall serve within ten days of the demand of the prosecuting attorney or ten days prior to trial, whichever is later, . . . upon the prosecuting attorney a written notice of the defendant's intention to offer a defense of alibi. Such notice by the defendant shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names, addresses, dates of birth, and telephone numbers of the witnesses, if known to the defendant, upon whom the defendant intends to rely to establish such alibi unless previously supplied."); (c) ("If prior to or during trial, a party learns of an additional witness whose identity, if known, should have been included in the information furnished under subsection (a) or (b) of this Code section, the party shall promptly notify the other party of the existence and identity of such additional witness.").

13

diligently searching for the witness, but had been unable to find her. It is significant, therefore, that the trial transcript shows that the State actually called Ms. McCray as a witness at trial, and the Appellant's trial counsel was able to cross-examine her. In fact, Ms. McCray testified that the Appellant's trial counsel had interviewed her prior to trial and that he had recorded the interview. It follows that the Appellant cannot show that the delay in his counsel's appointment denied him the benefit of Ms. McCray's testimony.

Although the Appellant now claims that the delay deprived him of the opportunity to call a different, "essential" alibi witness at trial, the record shows that he failed to identify that witness prior to trial in his notice of an alibi witness. As a result, he cannot show that the witness, if he or she had been found, would have been allowed to testify.[30] Nor has he proffered any evidence to support a finding that the witness would have testified favorably to him at trial or that, if the witness had testified, there is a reasonable probability that the outcome of the trial would have

_____

[30] See OCGA § 17-16-6 ("If at any time during the course of the proceedings it is brought to the attention of the court that the defendant has failed to comply with the requirements of this article, the court may order the defendant to permit the discovery or inspection, interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the defendant from introducing the evidence not disclosed or presenting the witness not disclosed, or may enter such other order as it deems just under the circumstances.").

been different.[31] Consequently, the Appellant has failed to demonstrate any prejudice that resulted from the delay in the appointment of trial counsel.[32]

And, as for whether a delay hampered the Appellant in obtaining the testimony of any *other* potential defense witnesses who may have been at "The Cut" on the day of the murder, the Appellant's original public defender admitted that "The Cut" was a "place of ill repute" and that many of the people who "hang out" in that area were "transients," such as drug users, prostitutes, and vagrants, who might refuse to speak to a lawyer or an investigator. He admitted, therefore, that, even if he or an investigator had tried to find witnesses in "The Cut" as soon as the Appellant was arrested, he could not say that it would have helped the Appellant's defense.

---

[31] See *Strong v. State*, 275 Ga. 465, 466 (2) (a) (569 SE2d 523) (2002) (The Appellant "did not produce [a potential defense] witness or his affidavit at the hearing on the motion for new trial, and thus did not present any probative evidence that he would have testified for the defense or that, if so, his testimony would have been exculpatory. Without a proper proffer of the testimony, Appellant cannot show a reasonable probability that the missing witness' appearance at trial would have resulted in a different verdict." Thus, the Appellant failed to demonstrate any prejudice resulting from the alleged error.) (citations and punctuation omitted).

[32] See *Robinson*, 299 Ga. at 650 (2).

Notably, the Supreme Court of Georgia specifically addressed this issue in its ruling in the appeal from the conviction of the Appellant's accomplice, Robinson.[33] In that case, Robinson also claimed that he was prejudiced by the delay in the appointment of counsel to represent him, arguing that it reduced his ability to track down witnesses in "The Cut."[34] The Court rejected that contention as mere speculation, given evidence that "the transient nature of these witnesses could have made them impossible to find."[35] The Appellant has failed to offer any reason that this Court should not reach the same conclusion in this case.

Consequently, we conclude that this enumeration presents no reversible error.

5. The Appellant complains that the State failed to disclose that it had an agreement with his accomplice, Grant, to give him immunity or leniency in exchange for his trial testimony, arguing that such failure to disclose hampered his ability to impeach Grant during trial.[36] There is no merit to this contention.

---

[33] See *Robinson*, 299 Ga. at 650 (2).

[34] See id.

[35] See id.

[36] See *Giglio v. United States*, 405 U. S. 150, 151, 154-155 (92 SCt 763, 31 LE2d 104) (1972) (The Supreme Court reversed the defendant's conviction because the prosecution's case "depended almost entirely" upon the testimony of a key

16

The record shows that, prior to trial, the State gave Grant use and derivative use immunity, agreeing that any testimony or evidence he presented during the Appellant's trial (or related proceedings) would not be used against him during his own trial, except to the extent that such testimony or evidence was false or conflicted with his testimony at his own trial. The State filed a notice of its grant of immunity on February 24, 2009, almost 18 months before the Appellant's August 2010 trial. Thus, the Appellant cannot claim to have been ignorant of this grant of immunity.

Moreover, the Appellant's assertion that the State must have agreed to give Grant leniency in his prosecution and sentencing in exchange for his testimony in the Appellant's trial is pure speculation. Not only is there no evidence of such an agreement in the record, the trial transcript affirmatively shows that no such agreement existed at the time of the Appellant's trial. Grant specifically testified that he had been charged with the murder of the victim and that he did not have any "deals" or agreements with the State "with regard to what's going to happen to [his]

witness, and the State failed to notify defense counsel before trial that it had promised the witness that he would not be prosecuted if he testified against the defendant. According to the Court, the credibility of this essential witness was "an important issue in the case, and evidence of any understanding or agreement as to a future prosecution would be relevant to his credibility[,] and the jury was entitled to know of it.").

case." In addition, during a bench conference, the prosecutor vociferously denied that such an agreement existed.[37] Finally, during the motion for new trial hearing, the Appellant's trial counsel admitted that, at the time of the Appellant's trial, the prosecutor informed him that the State did not have an agreement with Grant to give him leniency in exchange for his testimony.

In persisting to assert his claim of a secret deal between Grant and the State, the Appellant relies entirely on the fact that Grant received a lighter sentence than the Appellant believes was appropriate, given Grant's participation in the murder. However, "the subsequent disposition of charges against the witness, standing alone, does not establish the existence of a deal."[38] Given that the State has consistently denied that a deal with Grant existed at the time of the Appellant's trial, the trial court accepted that representation as true, and the Appellant offers nothing but pure speculation to the contrary, we cannot say that the court's finding that there was no

---

[37] During the bench conference, the prosecutor specifically informed trial counsel that, while the State had previously offered Grant a guilty plea agreement, Grant had refused it. The State then withdrew the offer and had not made another prior to his testimony in the Appellant's trial.

[38] *DeVaughn v. State*, 296 Ga. 475, 480 (5) (769 SE2d 70) (2015) (citation and punctuation omitted).

deal with Grant is clearly erroneous.[39] Consequently, this alleged error presents no basis for reversing the Appellant's convictions.

*Judgment affirmed. Doyle, C. J., and Miller, P. J., concur*.

---

[39] See id.