A91A0719. STROUD v. THE STATE.
(408 SE2d 175)

COOPER, Judge.
Appellant was convicted by a jury of kidnapping and appeals the

denial of her motion for new trial.

Construed in a light most favorable to the verdict, the evidence adduced at trial shows that appellant, Teresa Ann Stroud, and Evelyn Valdez-Hardin, appellant's aunt and co-defendant, occasionally worked as housekeepers for Steven and Gary Reynolds (the "Reynoldses"). When appellant and co-defendant discovered that the Reynoldses were eager to adopt a child, they told the Reynoldses about a drug addict named "Priscilla," who they claimed would be willing to give up her six-week-old boy, Christopher, for adoption. Throughout the month of December, appellant and co-defendant stayed in touch with the Reynoldses and gave progress reports about their alleged efforts to locate Priscilla and her baby. On the advice of an attorney, the Reynoldses obtained guardianship papers which were given to appellant so that Priscilla could sign them at the time she gave her baby to appellant. The Reynoldses also requested that Priscilla provide a copy of the baby's birth certificate so that the Reynoldses could take the baby to a doctor.

Elizabeth Faith Walker ("Faith") was the 15-year-old fianceé of appellant's brother and the mother of Christopher, a baby boy who was approximately eight weeks old at the time the appellant and co-defendant began discussing adoption with the Reynoldses. During the month of December, appellant attempted to have Faith locate copies of Christopher's birth certificate allegedly so that she could help Faith apply for A. F. D. C. Appellant and co-defendant also tried to convince Faith to have another baby because they knew a couple who would be willing to pay $10,000 for a child. Toward the end of December, appellant invited Faith to a party at co-defendant's mobile home to be held on the evening of December 29, 1989. She also contacted the Reynoldses and told them that Priscilla had finally been located, had agreed to give up her baby for adoption and would do so on the evening of the 29th.

On the Friday evening of the party, Faith surprised appellant by arriving at the mobile home without the baby, having left him at home with a babysitter. Appellant asked Faith whether "they" could get the child from the babysitter later in the evening. Faith, believing that "they" included Faith, her fiance, appellant and co-defendant, responded affirmatively. Shortly thereafter, appellant and co-defendant left the party, telling everyone they were going to the liquor store, and drove to Faith's home, where they convinced the babysitter that Faith had sent them to pick up the baby. Appellant and the co-defendant took the baby from the babysitter, drove to the nearby Waffle House and telephoned the Reynoldses with the news that they had just picked up the baby from the mother. When the Reynoldses arrived at the restaurant, they asked appellant for the signed guardianship papers and birth certificate, and appellant told them that she

had accidentally left the documents at home. After the Reynoldses left the restaurant with the baby, appellant telephoned the party and asked her brother to come help her take co-defendant to the hospital, who was complaining of either chest pains or an ulcer. No mention was made during the telephone conversation that appellant and co-defendant had picked up the baby from the babysitter, nor was any mention made later on in the evening when appellant and co-defendant returned to the mobile home from the hospital.

The next morning, Faith repeatedly asked appellant and co-defendant to drive her home to pick up her baby, but appellant found excuses not to leave the mobile home. Finally, when Faith could be put off no longer, appellant told Faith that she had picked up the baby the previous evening and brought the baby to her friends, "Dan and Brenda," for safekeeping when she had taken co-defendant to the hospital. Faith asked to be taken to "Dan and Brenda" but was told that the couple had gone to Alabama for the weekend. During the period Faith was trying to find out the whereabouts of her child, appellant and co-defendant were repeatedly calling the Reynoldses and asking them for money to pay for the baby's medical bills. Eventually, appellant convinced Faith to go on a drive with appellant, co-defendant and others to South Carolina and then back to the mobile home. When they returned early Sunday morning, Faith enlisted the assistance of appellant's mother and brother in locating her child, and when it became apparent that "Dan and Brenda" did not have the child, appellant's mother and brother intervened and threatened to call the police if appellant did not bring Faith to her baby. Appellant telephoned the Reynoldses, told them that she was in big trouble and that she was coming to pick up the baby so that she could return him to his mother. The Reynoldses, who had already renamed the baby and acquired baby supplies, clothes and a cradle, finally became suspicious; and, when appellant and Faith arrived at the Reynolds home on Monday afternoon to pick up Christopher, the police were called.

1. Relying on *Watson v. State*, 235 Ga. 461 (5) (219 SE2d 763) (1975), appellant argues that the trial court erred in refusing to charge the jury on interference with custody because interference with custody is a lesser included offense of kidnapping, the essential difference between the crimes lying in the degree of culpability required to establish the commission of each crime. However, appellant's reliance on *Watson* is misplaced because *Watson* was decided under subsection (b) of the former kidnapping statute, OCGA § 16-5-40 (b), which was repealed in its entirety by Ga. L. 1982, p. 970, § 1. Thus, we need to determine whether interference with custody is a lesser included offense of the current kidnapping statute.

OCGA § 16-5-40 provides: "A person commits the offense of kidnapping when he abducts or steals away any person without lawful

authority or warrant *and holds such person against his will.*" (Emphasis supplied.) OCGA § 16-5-45 (b) (1) provides: "A person commits the offense of interference with custody when without lawful authority to do so the person: (A) Knowingly or recklessly *takes or entices any child . . . away from the individual who has lawful custody of said child. . . .*" (Emphasis supplied.) Hence, the difference between the offenses does not lie in the degree of culpability required to establish the commission of each crime as alleged by appellant, rather the offenses differ in the classification of the victim which each statute seeks to protect — the person abducted and held against his will in the case of kidnapping, and the lawful custodian whose custody has been interfered with in the case of interference with custody. OCGA § 16-1-6. See also *Shuler v. State*, 195 Ga. App. 849, 850 (395 SE2d 26) (1990); *Moore v. State*, 140 Ga. App. 824 (2) (232 SE2d 264) (1976). In that the indictment did not allege that the mother of the child was the victim of any crime, interference with custody is not a lesser included offense of kidnapping, as a matter of law or fact, in this instance. Accordingly, appellant's first enumeration is without merit.

2. Appellant argues that the trial court should have granted her a new trial because of purported juror misconduct during the trial. In support of her motion, appellant attached the affidavit of her sister stating that she heard two jurors in the stairwell discussing the case, apparently outside the presence of the other ten jurors. "[T]he verdict may not be impeached by the affidavit of a third person establishing the utterance by a juror of remarks which may impeach his verdict. [Cit.] Appellant sought to impeach the verdict in precisely this manner which, under similar circumstances, has repeatedly been disallowed by both this court and the Supreme Court. [Cits.] The trial court thus properly denied appellant's motion for new trial based on this ground." *Arnold v. State*, 166 Ga. App. 313 (1) (304 SE2d 118) (1983).

3. Appellant next enumerates the general grounds claiming that the evidence was insufficient to support her conviction of kidnapping. "Determination of the witnesses' credibility is, of course, within the discretion of the trier of fact. [Cits.]" *Miasso v. State*, 191 Ga. App. 222, 223 (381 SE2d 315) (1989). Based upon the evidence adduced at trial, any rational trier of fact could have found the appellant guilty of kidnapping beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

4. Appellant lastly argues that the trial court erred in failing to grant a new trial because the State's witness, Elizabeth Faith Walker, perjured herself on the stand. In support of her motion, appellant submitted the witness' affidavit stating that the State had threatened to take her baby away from her, if she would not testify against ap-

pellant at trial. "A post-trial declaration by a State witness that [her] former testimony was false is not cause for a new trial. [Cits.]. Hence, this enumeration of error is without merit." *Pryor v. State,* 179 Ga. App. 293 (2) (346 SE2d 104) (1986).

*Judgment affirmed. Birdsong, P. J., and Pope, J., concur.*

DECIDED JULY 9, 1991.

*Ferguson & Ferguson, Pamela P. Ferguson,* for appellant.
*Robert E. Keller, District Attorney, Tracy G. Gladden, Assistant District Attorney,* for appellee.