## A10A1038. MOCK v. THE STATE.
(701 SE2d 567)

DOYLE, Judge.

A Screven County jury found Tony Darnell Mock guilty of burglary,[1] criminal attempt to commit burglary,[2] and two counts of theft by receiving a stolen firearm.[3] Mock appeals following the

---

[1] OCGA § 16-7-1 (a).

[2] OCGA § 16-4-1.

[3] OCGA § 16-8-7 (a).

denial of his motion for new trial,[4] arguing that the State failed to prove venue in Screven County for the burglary charge and challenging the sufficiency of the evidence as to each conviction. We reverse in part and affirm in part, for reasons that follow.

> We view the evidence on appeal in the light most favorable to the verdict, and no longer presume the defendant is innocent. We do not weigh the evidence or decide the witnesses' credibility, but only determine if the evidence is sufficient to sustain the convictions. We construe the evidence and all reasonable inferences from the evidence most strongly in favor of the jury's verdict.[5]

So viewed, the record shows that on February 7, 2007, Hope Cannon heard a noise outside her bedroom window at approximately 8:30 a.m. A few minutes later, she heard someone "snatching" at her back door. According to Cannon, the person "was pushing [on the door] real hard[,] but . . . didn't get in." Cannon looked out and saw a man walking away from her house. She opened the back door and asked the man what he wanted. The man replied that he was looking for water and then yelled to another man that Cannon did not have any water, gas, or a phone. Both men were wearing short-sleeved black shirts and brown gloves, and they were sweating profusely. Cannon told the men to leave her property, threatening to shoot them if they did not do so. One of the men fled on foot and the other fled in a car, which one of them had parked behind Cannon's house, close enough "that they could have got on top of the car to come in [her] window if they had to. . . ." Cannon later identified Mock at trial as the man waiting by the car who drove off after she threatened them.

Screven County Sheriff's Deputy Kenneth Kelley responded to Cannon's 911 call. Cannon told Kelley that "she heard someone trying to get in her kitchen door." Cannon described the two men and told Kelley that they drove away in a four-door white sedan. Kelley put out a be on the lookout ("BOLO") alert for the vehicle and its passengers.

The same day, Billie Boykin left home to go to work at approximately 7:50 a.m. Around 11:00 a.m., Boykin's son called her at work and told her that her home had been burglarized. When Boykin arrived home, she saw that her back door had been pried open, and

---

[4] The trial court granted a portion of Mock's motion for new trial, merging the two counts of theft by receiving. The trial court denied the motion for new trial on the other grounds Mock alleged.

[5] (Citations omitted.) *Preval v. State*, 302 Ga. App. 785 (1) (692 SE2d 51) (2010).

her bedroom had been "ransacked." The drawers to her jewelry armoire had been pulled out and thrown on the floor, and several jewelry boxes were missing, along with some gold coins and state quarters she had been saving.

Deputy Kelley responded to Boykin's 911 call, and he determined that the point of entry was her back door. Kelley called Sergeant Crockett, the chief investigator for the department, to assist him in processing the crime scene. While Sergeant Crockett was en route to Boykin's residence, he saw a vehicle matching the BOLO that Kelley put out for the attempted burglary at Cannon's home. When the driver saw Crockett's patrol car, he attempted to pull into a driveway, but overshot it. Crockett stopped the vehicle, and Deputy Kelley arrived on the scene shortly thereafter.

Denny Corder, the driver, and Mock, the passenger, were both wearing dark clothing. Corder and Mock told the police that they had been on Houston Dale Loop — the street on which Cannon lived — earlier in the day "looking for some gas." Corder told Sergeant Crockett that they were going to visit a friend at the house he tried to pull into; Crockett questioned the resident of that house, who indicated that she was not familiar with Corder, Mock, or the car Corder was driving. The officers then patted Corder and Mock down and found multiple state quarters on both men and a tennis bracelet in the pocket of Corder's jacket, which was in the back seat. The police also recovered two pairs of gloves and a screwdriver from the vehicle.

Deputy Kelley returned to Boykin's residence, and she identified the tennis bracelet as one that had been taken from her residence. She also indicated that the quarters found on Corder and Mock appeared the same as the ones she had been saving. According to Kelley, the marks on Boykin's back door were consistent with the screwdriver found in the vehicle Corder was driving.

Sergeant Crockett then spoke to both suspects again. Mock did not provide any information, but Corder told the officer that "if anything was missing it might be in a trailer in the rear of the Mock residence, on Mock property." The police went to the Mock residence, and Mock's sister gave them permission to search the property. At Corder's suggestion, the police searched an abandoned trailer on the property and found a sawed-off shotgun and a rifle, which had been reported stolen. The police took the guns to the purported owner, who identified them as the guns that were stolen from his home several days earlier.

Corder pleaded guilty to burglary and criminal attempt to commit burglary. At Mock's trial, Corder testified that he was intoxicated on February 7 and could not recall all of the details of the events on that day. Corder stated that he and Mock approached

Cannon's house "[t]o use the phone and buy some gas." According to Corder, there were no cars at Cannon's house at the time. He also testified that he and Mock entered Boykin's home through the back door, and Corder took jewelry and coins from the residence.

At trial, Mock testified that he and Corder approached Cannon's house to see if she had any water for the car he was driving, which was overheating. According to Mock, he knocked on the door, but he did not try to enter Cannon's house. Mock denied that he went to Boykin's house, but explained that Corder took Mock's mother's vehicle for a period of time on February 7 while Mock remained at a friend's house. Mock also denied that he had any knowledge of the two guns that the police found in the trailer on his mother's property.

1. *Burglary.*

(a) Mock argues that the State failed to prove that venue was proper in Screven County for his burglary conviction.

> Venue is more than a mere procedural nicety; it is a constitutional requirement that all criminal cases be conducted in the county in which the crimes are alleged to have occurred. Proof of venue is essential to a criminal prosecution. In Georgia, as in many other states, the prosecution is required to establish venue beyond a reasonable doubt. Whether venue has been sufficiently proved is an issue for the jury to determine.[6]

On appeal, "we view the evidence in a light most favorable to support the verdict and determine whether the evidence was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that the crime was committed in the county where the defendant was indicted."[7]

This case was tried in Screven County. The only direct evidence presented as to the location of Boykin's residence was her testimony that she lived on Union Church Road and, in response to the prosecutor's question regarding whether her residence was in Screven County, her response, "Three miles out of Newington." The State contends that Boykin's response to the prosecutor's question was affirmative. We disagree. Boykin's answer indicating the city of her residence was nonresponsive as to the county of her residence. And it is well settled that "proving that a crime took place within a city without also proving that the city is entirely within a county

---

[6] (Footnotes omitted.) *Graham v. State,* 275 Ga. 290, 292 (2) (565 SE2d 467) (2002).

[7] *Chapman v. State,* 275 Ga. 314, 317 (4) (565 SE2d 442) (2002).

does not establish venue."[8] Similarly, "a street name, standing alone, is never sufficient to establish venue, because streets frequently run through more than one county."[9] There was no evidence here as to the location of either Newington or Union Church Road vis á vis Screven County.

"Finally, the fact that the responding officers were employed by the [Screven] County Sheriff's Department cannot serve as the exclusive proof that the crimes occurred in that county."[10] As we have previously stated, "the investigating officers' county of employment does not, in and of itself, constitute sufficient proof of venue to meet the beyond a reasonable doubt standard."[11] Thus, because the only evidence of venue is the officers' county of employment, the record before us does not authorize a finding that the State proved beyond a reasonable doubt that the burglary of Boykin's residence occurred in Screven County.[12]

(b) Although Mock's burglary conviction is reversed based on the State's failure to prove venue, "the State may retry [him] without violating the Double Jeopardy Clause if there was otherwise sufficient evidence at trial to support the defendant's convictions for the crimes charged."[13] Here, Corder testified that Mock entered the Boykin residence with him without the permission of the homeowner. The State presented evidence that Mock was stopped shortly after the burglary in a car with Corder, with items stolen from Boykin's residence, a screwdriver that appeared to have been used to pry open Boykin's back door, and gloves. Given this evidence, the jury was authorized to conclude beyond a reasonable doubt that Mock committed the crime of burglary.[14]

2. *Attempted Burglary.* Mock also challenges the sufficiency of the evidence to support his conviction for attempted burglary of

---

[8] (Footnote omitted.) *Graham*, 275 Ga. at 293 (2).

[9] *Jones v. State*, 272 Ga. 900, 904 (3) (537 SE2d 80) (2000).

[10] *In the Interest of D. D.*, 287 Ga. App. 512, 514-515 (2) (b) (651 SE2d 817) (2007).

[11] *King v. State*, 271 Ga. App. 384, 387 (1) (609 SE2d 725) (2005).

[12] See *Lee v. State*, 305 Ga. App. 214 (2) (699 SE2d 389) (2010).

[13] *Melton v. State*, 282 Ga. App. 685, 689 (2) (639 SE2d 411) (2006), citing *Jones v. State*, 272 Ga. at 905 (4) ("[I]f a criminal conviction is reversed because of an evidentiary insufficiency concerning the procedural propriety of laying venue within a particular forum, and not because of an evidentiary insufficiency concerning the accused's guilt, retrial is not barred by the Double Jeopardy Clause.").

[14] See *McCord v. State*, 302 Ga. App. 303, 304 (690 SE2d 923) (2010) (" 'A jury is not required to believe a defendant's testimony, nor to disbelieve the [S]tate's witnesses.' "); *Chambers v. State*, 288 Ga. App. 550, 551 (654 SE2d 451) (2007) (" 'Evidence of recent, unexplained possession of stolen goods may be sufficient to give rise to an inference that the defendant committed the burglary.' "); *Stargell v. State*, 254 Ga. App. 72, 73 (1) (561 SE2d 207) (2002) (testimony of accomplice describing defendant's actions, coupled with circumstantial evidence of defendant's participation was sufficient to support his conviction for burglary).

Cannon's residence. Specifically, Mock argues that the State failed to prove that he attempted or intended to enter Cannon's residence. We find this argument unpersuasive.

Cannon testified that she heard a noise outside her window and then heard someone "snatching" at and "pushing on" her door. She observed Mock and another man outside her house, and after she threatened them, they fled in a car that they had parked close enough to the house that they could have stood on it and climbed through a window. Mock relies on his testimony and that of Corder denying that they had any intent or made any effort to enter Cannon's property. But

> the weight and credibility of witnesses are questions for the triers of fact; that some evidence offered by a witness seems contradictory to his own or to some other's, or incomplete or uncertain, does not automatically discredit the evidence given by that witness, or others, for it is the function of the triers of fact to determine to what evidence it gives credence. It is not for this Court to determine or question how the trier of fact resolved any apparent conflicts or uncertainties in the evidence. Rather, on appeal, we indulge every contingency in favor of the verdict.[15]

Viewing the evidence in a light most favorable to the verdict, the evidence was sufficient to support Mock's conviction of attempted burglary.[16]

3. *Theft by Receiving a Stolen Firearm.* Mock contends that the evidence was insufficient to support his conviction for theft by receiving stolen property.

OCGA § 16-8-7 (a) provides that

> [a] person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner. "Receiving" means acquiring possession or control or lending on the security of the property.

[15] (Punctuation omitted.) *In the Interest of J. S.*, 296 Ga. App. 144, 147 (2) (a) (673 SE2d 645) (2009).

[16] See id.; *Rudnitskas v. State*, 291 Ga. App. 685, 687 (1) (662 SE2d 729) (2008); *Minor v. State*, 278 Ga. App. 327, 328-329 (629 SE2d 44) (2006); *Methvin v. State*, 189 Ga. App. 906, 907-908 (1) (377 SE2d 735) (1989).

Here, the police found the stolen guns in a bathtub in a "dilapidated," "abandoned" trailer, which was located on the property where Mock lived with his mother. At trial, Sergeant Crockett testified that there did not appear to be anything stored in the trailer, and that the furniture, if any, "was dilapidated, too." Corder, who told the police about the trailer, had been staying with the Mocks for some period of time.

At most, the State has established that the stolen guns were located in a separate building on property where Mock lived. But there was no evidence that Mock had any knowledge, control, or possession of the trailer. Similarly, "[t]here was no evidence that he was ever in possession or control of the [guns], a necessary element of theft by receiving."[17] Thus, the evidence was insufficient to sustain Mock's conviction for theft by receiving.[18]

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Ellington, J., concur.*

DECIDED SEPTEMBER 16, 2010.

*Robert L. Persse*, for appellant.
*Richard A. Mallard, District Attorney, Keith A. McIntyre, Benjamin T. Edwards, Assistant District Attorneys*, for appellee.

---

[17] *Gonzales v. State*, 276 Ga. App. 11, 13 (622 SE2d 401) (2005).

[18] See id.; *Buchanan v. State*, 254 Ga. App. 249, 250-251 (1) (562 SE2d 216) (2002); *Harris v. State*, 247 Ga. App. 41, 42-43 (543 SE2d 75) (2000).