## A11A0894. SEYMOUR v. THE STATE.
(718 SE2d 354)

SMITH, Presiding Judge.

A jury found Charles Thomas Seymour guilty of arson. Following the denial of his amended motion for new trial, Seymour appeals, asserting several claims of error, including a claim that the trial court erred in denying him the right to represent himself. Because the trial court employed the wrong standard for determining whether Seymour knowingly and intelligently waived his right to counsel, we reverse this case for a new trial.

Construed in favor of the verdict, the record reveals that

---

Seymour spent the night at his parent's home. Around 11:00 p.m., Seymour's father awoke to find a metal shelter adjacent to his home on fire. Fearing that the fire would spread, Seymour's father moved his van and also instructed Seymour to move his truck. Seymour said nothing in reply, moved his truck, and then went back to bed. Seymour admitted both to a sheriff on the scene and in an interview with police a month later that he started the fire using nearby gas cans.[1]

1. Seymour first asserts that the trial court erred in refusing to allow him to represent himself at trial. "On appeal, we accept the trial court's findings on disputed facts and the credibility of witnesses unless clearly erroneous, but independently apply the law to the facts." (Citations and footnote omitted.) *State v. Rodriguez*, 274 Ga. 728 (559 SE2d 435) (2002).

The record reflects the following colloquy between Seymour and the trial court:

> The Court: If you represent yourself, you do it. If your attorney represents you, he does it.
>
> [Seymour]: All right. I'm being forced into this there ain't no doubt about it.
>
> The Court: No sir.
>
> [Seymour]: Yes sir, I am.
>
> The Court: You hired your own lawyer, but you won't let him represent you.
>
> [Seymour]: He ain't willing to present evidence. When we picked the jurors, he said, fire me. He kept on at this and corrupted the whole jury because he kept on saying fire me after you done made a ruling that I had a right to be involved in it.
>
> The Court: I'm not going to get into disagreements between you and your lawyer. The only thing I'm trying to figure out is whether you're going to represent yourself which you have a right to do or whether you're going to let the lawyer represent you and handle your case.
>
> [Seymour]: If he's not willing to present evidence, I have no choice. I'll have to do it myself.

---

[1] Seymour claimed that voices in his head from a "chip" that had been placed there told him to start the fire. As stated by the trial court in its order denying the motion for new trial, Seymour was ordered to undergo a mental evaluation. That evaluation concluded that he was competent to stand trial and that he had the "mental capacity to distinguish between right and wrong and, in fact, acknowledges the wrongfulness of the alleged offense." As a result of the evaluation, the trial court found Seymour competent to stand trial.

The Court: We haven't even gotten to that point.

[Seymour]: I've discussed it with him and he says he ain't going to do it.

. . .

[Seymour]: When he won't show evidence, I'm in more danger by not representing myself. I mean, I've got to show evidence. I can't go my word against theirs. I want to show evidence to prove what I'm saying and he don't want to do that.

The trial court then asked Seymour a series of questions concerning whether he understood a lawyer's role during trial and the various objections and motions that a lawyer makes on behalf of the client.

The court ruled that Seymour did not have the capacity to represent himself stating: "You do not know the law. You do not know the rules of procedure. You do not know the rules of evidence. To allow you at this point to represent yourself will almost assure a conviction." Seymour responded: "If I'm not allowed to present my case to show what I'm saying instead of going word for word, then I'll be convicted, too. I've got a better chance on my own." The trial court then requested Seymour's hired counsel to continue to represent him.

"[B]oth the federal and state constitutions guarantee a criminal defendant the right to self-representation." (Citations and punctuation omitted.) *State v. Evans*, 285 Ga. 67, 68 (673 SE2d 243) (2009). See also *Faretta v. California*, 422 U. S. 806 (95 SC 2525, 45 LE2d 562) (1975); Ga. Const. of 1983, Art. I, Sec. I, Par. XII. And the trial court must determine whether the defendant knowingly and intelligently waived his federal and state constitutional rights to counsel, and in doing so "must apprise the defendant of the dangers and disadvantages inherent in representing himself so that the record will establish that he knows what he is doing and his choice is made with eyes open." (Citations and punctuation omitted.) *Lamar v. State*, 278 Ga. 150, 152 (1) (b) (598 SE2d 488) (2004).

Here, we note that the trial court did not engage in the required colloquy with Seymour to apprise him of the dangers and disadvantages of representing himself. The court only asked Seymour if he understood the function of counsel in representing a defendant. Seymour repeatedly expressed his desire to represent himself for fear that his counsel would not present the evidence he believed was crucial to his defense. The court concluded that Seymour did not have the capacity to represent himself because he did not have a grasp of the law or of the rules of procedure. However "[t]he test is not whether the accused is capable of good lawyering — but whether he or she knowingly and intelligently waives his or her right to counsel."

(Citation and punctuation omitted.) *Lamar v. State*, supra at 153 (1) (b).

Because the record reflects that Seymour "both wished to make and was mentally competent to make a knowing and intelligent waiver of his right to counsel," *Lamar v. State*, supra at 153 (1) (c), and the trial court employed the wrong standard for making this determination, the court committed reversible error.

2. Because the evidence presented at trial was sufficient to authorize a rational trier of fact to find Seymour guilty of arson as alleged in the indictment, see OCGA § 16-7-60 (a) (5), the State is authorized to retry him on that charge. See *Lamar v. State*, supra at 153 (2); *Mock v. State*, 306 Ga. App. 93, 97 (1) (b) (701 SE2d 567) (2010).

3. Seymour's remaining enumerations are moot in light of our holding in Division 1.

*Judgment reversed. Mikell and Dillard, JJ., concur.*

DECIDED NOVEMBER 9, 2011.

*Patricia A. Provost*, for appellant.

*Robert W. Lavender, District Attorney, James A. Carmichael, Assistant District Attorney*, for appellee.