**SECOND DIVISION**
**BARNES, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 18, 2013**

# In the Court of Appeals of Georgia

A12A2115. CARTER v. THE STATE.

MCMILLIAN, Judge.

Michael Jerome Carter appeals the trial court's denial of his amended motion for new trial after a jury convicted him on three counts of child molestation and two counts of aggravated sexual battery. Because we find that the State failed to establish venue as to two of the three counts of child molestation (Counts II and III) and both counts of sexual battery (Counts I and IV), we reverse as to those counts. However, we affirm Carter's conviction on the remaining count of child molestation (Count V) for the reasons set forth below.

Viewed in the light most favorable to the verdict,[1] the evidence at trial showed that the victim, A. W., was 11 years old at the time she testified at Carter's trial in

---

[1]See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

August 2011. Her parents were separated, and at the time relevant to the charges in this case, she lived primarily with her mother and saw her father on weekends. Carter was the boyfriend of A. W.'s mother. Beginning in the summer of 2009, Carter began touching A. W.'s private part with his hand and putting his finger inside her private part. A. W. testified that this touching occurred "a lot," between 50 and75 times. Sometimes it happened at her mother's house and sometimes it happened at Carter's house. One school night in May 2010, Carter came into A. W.'s bedroom when she was in bed. He pulled down both his and A. W.'s pants and touched her private part with his penis (the "last incident"). Her mother was asleep when this incident occurred, and Carter had instructed her brother to "hide." This incident prompted A. W. to write her mother a note stating what Carter had been doing to her. She left the note by her mother's bed the next morning while her mother was asleep and then went to school.

After A. W.'s mother notified A. W.'s father about the note, he pulled A. W. out of school and notified the police. Although A. W. was reluctant to talk to her father about the incidents involving Carter, she described them for her grandmother, her father's mother. A. W. later told a forensic interviewer about these incidents, and

the tape of that interview was played at trial. A. W. also testified to these events at trial.

1. Carter argues that the evidence was insufficient to support his convictions for child molestation and aggravated sexual battery. "When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation and punctuation omitted; emphasis in original.) *Knight v. State,* 311 Ga. App. 367 (1) (715 SE2d 771) (2011). And "the victim's testimony alone is generally sufficient to establish the elements of child molestation." (Citation omitted.) Id. at 368 (1); OCGA § 24–4–8 ("The testimony of a single witness is generally sufficient to establish a fact"). Thus, "Georgia law does not require corroboration of a child molestation victim's testimony." (Punctuation and footnote omitted.) *Barnes v. State*, 299 Ga. App. 253, 254 (1) (682 SE2d 359) (2009).

A person commits the offense of child molestation when he or she "[d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person . . . ." OCGA § 16-6-4 (a) (1). "A person commits the offense of aggravated

3

sexual battery when he or she intentionally penetrates with a foreign object the sexual organ or anus of another person without the consent of that person." OCGA § 16-6-22.2 (b).

Two of the child molestation counts (Counts II and III) charged Carter with using his hand to touch A. W.'s vagina. The two counts of aggravated sexual battery (Counts I and IV) charged Carter with using his fingers to penetrate her sexual organ without her consent. A. W. testified that Carter had touched her in both of these ways multiple times. And because a child under 16 years of age cannot consent to sexual acts, the State was not required to show that A. W. did not consent to Carter's actions. *Disabato v. State*, 303 Ga. App. 68, 70 (1) (692 SE2d 701) (2010). The third child molestation count (Count V) charged Carter with using his penis to touch A. W.'s vagina, and A. W. testified regarding this last incident at trial. Prior to trial, she described these acts to her mother, her grandmother and the forensic interviewer, who all testified at trial. Viewed in the light most favorable to the verdict, this evidence was sufficient to establish the elements of the crimes of child molestation and aggravated battery as charged in the indictment beyond a reasonable doubt. "To the extent [Carter] challenges the credibility of the witnesses or any inconsistencies or conflicts in the evidence, a jury is authorized to believe or disbelieve all or any part

of the testimony of witnesses, and it serves as the arbiter of conflicts in the evidence before it." (Citation and punctuation omitted.) *Maloney v. State*, 317 Ga. App. 460, 461 (731 SE2d 133) (2012).

2. Carter also asserts that the State failed to establish the venue of these crimes. "We have held that venue is a jurisdictional fact and an essential element that the State must prove beyond a reasonable doubt for every crime." (Citations omitted.) *Lanham v. State,* 291 Ga. 625, 626 (2) (732 SE2d 72) (2012). "The State may establish venue by whatever means of proof are available to it, and it may use both direct and circumstantial evidence. It must, however, come forth in all criminal prosecutions with evidence to show beyond a reasonable doubt that venue is properly laid." *Jones v. State*, 272 Ga. 900, 902-903 (2) (537 SE2d 80) (2000).

A. W. testified that the incidents at issue happened both at Carter's house and her mother's house. A. W.'s father testified that A. W.'s mother moved frequently and that she had moved approximately three times within a year. A. W. told the forensic interviewer in June 2010 that she moved in with her father after he learned of the last incident. Before moving in with her father, she had lived with her mother and brother in a townhouse, but they had "just moved" there. One of the detectives stated that in investigating A. W.'s allegations, he visited the mother at her home. The prosecutor

asked him to identify the county in which the mother's home was located, and he indicated that it was in Clayton County. The State presented no evidence, however, regarding the mother's prior residences. And although Carter listed his address as being in Jonesboro in his recorded interview with police , which was played at trial, the State presented no evidence establishing that the entire city of Jonesboro lies within Clayton County. It is well established that "proving that a crime took place within a city without also proving that the city is entirely within a county does not establish venue." (Footnote omitted.) *Graham v. State*, 275 Ga. 290, 293 (2) (565 SE2d 467) (2002). See also *Powers v. State*, 309 Ga. App. 262, 263 (1) (709 SE2d 821) (2011); *Mock v. State*, 306 Ga. App. 93, 96–97 (1) (a) (701 SE2d 567) (2010); *Melton v. State*, 282 Ga. App. 685, 688 (1) (a) (639 SE2d 411) (2006).

Similarly,

the fact that the responding officers were employed by the [Clayton County Police Department] cannot serve as the exclusive proof that the crimes occurred in that county. As [this Court has] previously stated, the investigating officers' county of employment does not, in and of itself, constitute sufficient proof of venue to meet the beyond a reasonable doubt standard.

6

(Punctuation and footnotes omitted.) *Mock*, 306 Ga. App. at 97 (1) (a). See also *Powers*, 309 Ga. App. at 264 (1).

Thus, the State proved that the mother's townhouse was located in Clayton County but failed to prove that any of the mother's prior residences or Carter's residence were also in that county. The evidence supported a reasonable inference that the last incident occurred at the mother's Clayton County townhouse, because the townhouse was the last place A. W. lived with her mother before moving in with her father after the last incident. And that incident occurred in A. W.'s bedroom on a school night with her mother sleeping nearby and her brother in the house. But the State failed to establish that any of the other incidents occurred at the mother's townhouse. Because the State failed to prove the venue of any incident other than the last incident, we have no choice but to reverse Carter's convictions under Counts I, II, III and IV. But we note that Carter may be retried for these crimes because the evidence at trial was otherwise sufficient. *Powers*, 309 Ga. App. at 264 (1); *Mock*, 306 Ga. App. at 97 (1) (b).

3. Carter also contends that the trial court erred in qualifying the forensic interviewer, Rebecca Kouns, as an expert in the field of child forensic interviews. "Acceptance or rejection of the qualifications of a proposed expert witness is within

the sound discretion of the trial judge and will not be disturbed on appeal absent manifest abuse." (Footnote omitted.) *Bridges v. State,* 279 Ga. 351, 354 (3) (613 SE2d 621) (2005).

> An expert witness is anyone who, through training, education, skill, or experience, has particular knowledge that the average juror would not possess concerning questions of science, skill, trade, or the like. An expert witness may render an opinion within his area of expertise after the proper qualifications have been proven to the trial court.

(Footnotes omitted.) *Fielding v. State*, 278 Ga. 309, 311 (3) (602 SE2d 597) (2004). "Generally, nothing more is required to qualify an expert than that she has been educated in a particular trade or profession. This special knowledge may be derived from experience as well as study." (Punctuation and footnote omitted.) *Attaway v. State,* 279 Ga. App. 781, 782 (1) (632 SE2d 397) (2006).

Kouns testified that she was the program manager at Rainbow House, Incorporated, a non-profit "emergency shelter for children, a runaway and homeless youth program and a child advocacy center." In her capacity as program manager, she oversaw the advocacy center and ensured compliance with applicable standards, but she spent 80% of her professional time conducting forensic interviews. In her ten years of experience, Kouns had conducted almost 350 forensic interviews. At the

8

beginning of her career, Kouns underwent 40 hours of training in the field of forensic interviews. To maintain accreditation, Kouns was required to undergo monthly peer reviews, which involved additional training and required her to read journals and publications in the field; she was also required to complete 24 hours of additional training per year. Although Kouns had not earned a college degree, no degree or board certification is required for forensic interviewers in Georgia. At the time of Carter's trial, Kouns had been qualified as an expert witness in five prior trials.

Given Kouns' training and experience, we find no abuse of discretion in the trial court's qualification of Kouns as an expert witness in the area of forensic interviews. See *Hubert v. State*, 297 Ga. App. 71, 74 (4) (676 SE2d 436) (2009) (upholding the trial court's qualification of police detective who had participated in two special training sessions in techniques for interviewing child victims of sexual abuse and who had conducted 50 such interviews).[2]

4. Carter further asserts that he received ineffective assistance of trial counsel because his attorney 1) failed to call an expert witness on behalf of the defense on the

---

[2] Moreover, we note that Carter's trial counsel did not object to Koun's qualification as an expert witness. Instead, he stated, "The standard for what is an expert is almost non-existent in Georgia courts. The jury will decide if they believe she is an expert."

9

issue of forensic interviewing and 2) failed to object to what he contends was improper bolstering by Kouns.

In considering the trial court's ruling on a claim of ineffective assistance of counsel, this Court accepts "the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citation and punctuation omitted.) *Handley v. State*, 289 Ga. 786, 787 (2) (716 SE2d 176) (2011). And

> [t]he two-prong test for determining the validity of a claim of ineffective assistance of counsel provided in *Strickland v. Washington*, 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984), asks whether counsel's performance was deficient and, if so, whether this deficiency prejudiced the defense; that is, whether there is a reasonable probability that the outcome of the proceedings would have been different, but for counsel's deficiency.

(Citation and punctuation omitted.) *Bruce v. State*, 252 Ga. App. 494, 498 (2) (555 SE2d 819) (2001). "If an appellant fails to meet his burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." (Citations omitted.) *Kendrick v. State*, 290 Ga. 873, 877 (4) (725 SE2d 296) (2012). Further, appellate courts recognize a strong presumption "that the performance of trial counsel falls within the wide range of reasonable professional assistance. The

10

reasonableness of the conduct is viewed at the time of trial and under the circumstances of the case." (Citation and punctuation omitted.) *Williams v. State*, 277 Ga. 853, 857 (6) (596 SE2d 597) (2004).

(a) Carter asserts that his trial counsel was ineffective in failing to call an expert witness to testify as to the flaws in Kouns' forensic interview of A. W. In support of this claim, Carter's motion counsel presented his own expert at the hearing on the motion for new trial. The expert questioned the methodology employed by Kouns and her failure to follow up on responses by A. W. that may have suggested she was motivated to lie about Carter because she disliked him and/or wanted to live with her father.

But Carter's trial counsel testified that he made the strategic decision not to call an expert in this case based on his consideration of the victim's age, the facts of the case and the forensic interview itself, with some small consideration given to the financial resources of Carter's family. The attorney had won a child molestation case a few months before Carter's trial without the benefit of an expert, and based upon his 40 years of experience practicing law and his familiarity with Clayton County jurors, he did not think that the facts of Carter's case warranted expert testimony. He viewed the primary issue with the forensic interview as coming down "to

11

suggestibility or bolstering the testimony," which he addressed through cross-examination and argument. He did not think an expert was needed to present the defense. He also dealt with the issue of A. W.'s dislike of Carter and her possible motive for fabrication, which he saw as "a core piece of the defense," in the same manner. He viewed these issues as a matter of common sense for the jury, who "can determine whether it looks like [forensic interviewers are] bolstering or they're leading or whatever else."

The trial court concluded that Carter failed to carry his burden of establishing deficient performance because the evidence demonstrated that Carter's trial attorney made the decision not to call an expert based upon strategy and trial tactics. We agree. Although Carter's current counsel would have relied upon expert testimony to present his defense, his trial counsel presented a similar defense through cross-examination and argument.

> [Such t]rial strategy and tactics do not equate with ineffective assistance of counsel. Effectiveness is not judged by hindsight or by the result. Although another lawyer may have conducted the defense in a different manner and taken another course of action, the fact that appellant and his present counsel disagree with the decisions made by trial counsel does not require a finding that [Carter's] original representation was inadequate.

(Citation, punctuation and footnote omitted.) *Hazelrigs v. State*, 255 Ga. App. 784, 786 (2) (567 SE2d 79) (2002).

(b) Carter also asserts that his trial counsel was deficient in failing to object to the State's questions asking Kouns to testify as to A. W.'s veracity. Carter takes issue with the following exchange during the State's direct examination of Kouns:

> Q. Now, Ms. Kouns, [A. W.] corrected you a few times during the course of the interview, did she not?

> A. Yes, ma'am.

> Q. Okay. Is that – what – does that tell you anything in your training and your experience?

> A. That's actually consistent with a child who is – with a child who's consistent with their story and –

Carter is correct that Georgia law precludes a witness from testifying as to another witness's credibility:

> It is true that in Georgia, the credibility of a witness is to be determined by the jury, and the credibility of a victim may not be bolstered by the testimony of another witness. Thus, a witness may not give an opinion as to whether the victim is telling the truth. Furthermore, Georgia law generally precludes a witness from testifying as to his or her opinion

13

regarding an ultimate issue in the case because to do so would invade the province of the jury.

(Footnote omitted.) *Canty v. State*, 318 Ga. App. 13, 16 (2) (733 SE2d 64) (2012). But Kouns' testimony merely indicated that A. W. was consistent in her story. She did not address whether A. W.'s story was believable nor did she opine that it was truthful. Thus, Kouns "did not directly comment on [A. W.'s] credibility and did not impermissibly address the ultimate issue of whether [Carter] improperly touched [A. W.]" (Punctuation omitted.) Id. Therefore, "[s]ince the testimony was admissible, an objection to it would have been without merit, and failure to make a meritless objection does not constitute ineffective assistance of counsel." (Punctuation and footnote omitted.) *Breazeale v. State*, 290 Ga. App. 632, 634 (2) (660 SE2d 376) (2008).

Moreover, Carter bore the burden on his motion for new trial of showing his trial counsel's deficiency, and his motion counsel never questioned the trial attorney about why he failed to object to this evidence. Thus, he made no affirmative showing that his trial counsel's failure to object demonstrated inadequate performance instead of a strategic decision. The presumption of reasonable trial strategy is extremely difficult to overcome in the absence of such evidence. See *Boykin v. State*, 264 Ga.

14

App. 836, 841 (5) (592 SE2d 426) (2003); *Morgan v. State*, 275 Ga. 222, 227 (10) (564 SE2d 192) (2002). In any event, Carter has not established that an objection to this testimony would have raised a reasonable probability of a different outcome.

Accordingly, we affirm the trial court's denial of Carter's claims of ineffective assistance of counsel.

*Judgment affirmed in part and reversed in part. Barnes, P. J., and McFadden, J., concur.*