**FIFTH DIVISION**
**MCFADDEN, P. J.**
**BROWN AND MARKLE, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**February 22, 2024**

# In the Court of Appeals of Georgia

A23A1319. MYERS v. THE STATE.

MCFADDEN, Presiding Judge.

After a jury trial, Austin Myers was convicted of interstate interference with an adoptive grandfather's lawful custody of his 16-year-old grandchild. Myers appeals, setting forth five enumerations of error. He first challenges the sufficiency of the evidence supporting his conviction; but the record reveals sufficient evidence from which the jury was authorized to find Myers guilty of the charged offense beyond a reasonable doubt. Myers next alleges that the trial court erred in denying his motion for discharge and acquittal because of a speedy trial violation; but he has failed to show that the trial court abused its discretion in denying the motion. In his third enumeration, Myers contests the admission of evidence of his sexual acts with the 16-

year-old; but such intrinsic evidence was admissible to explain context and motive of the crime. Myers next claims that his trial counsel was ineffective; but he has failed to show deficient performance by his attorney. Finally, Myers correctly asserts that the trial court erred in ordering, as a condition of his sentence, that he register as a sexual offender. So we affirm the judgment of conviction for interstate interference with custody, but direct the trial court on remand to amend the sentence by removing the improper condition requiring sex offender registration.

1. *Sufficiency of the evidence*

On appeal, we "view[] the evidence in the light most favorable to the jury's verdict[.]" *Owens v. State*, 353 Ga. App. 848 (840 SE2d 70) (2020). So viewed, the evidence showed that when L. E. K. was 15 years old, she began communicating with Myers in an online chat room. L. E. K. told Myers that she was 15, in high school, and lived with her grandparents. Her online profile indicated her age and she also sent pictures of herself to him. Myers, who was in his sixties, did not tell L. E. K. his age or send pictures of himself to her. At Myers' request, he and the child began communicating through private messages, and Myers eventually suggested that L. E. K. come live with him.

2

In April 2019, after L. E. K. had turned 16 years old, Myers made arrangements to pick her up from her house. Myers instructed L. E. K. to pack her bags, remove the SIM card from her phone, leave a note saying that she was running away, and meet him at a nearby park. L. E. K. snuck out of her house and met Myers, who was waiting in his pickup truck. When L. E. K. got into the truck, Myers kissed her and she realized his age for the first time. Myers then drove L. E. K. to a motel near Atlanta, where he had sexual intercourse with her. The next day, Myers drove L. E. K. to his house in Missouri, where he had sexual intercourse with her multiple times for approximately a week.

In the meantime, L. E. K.'s grandparents, who had adopted her in 2014, reported her missing to law enforcement officers. Investigators were eventually able to determine the child's location through an internet address from which she had contacted a friend. A Missouri sheriff found L. E. K. hidden in a bedroom in Myers' house, and she was later released to her grandfather and returned to Georgia.

> Under OCGA § 16-5-45 (b) (1) (A), a person commits the offense of interference with custody when, without lawful authority to do so, he knowingly or recklessly takes or entices a child away from the individual who has lawful custody of the child. [For purposes of this code section,] OCGA § 16-5-45 (a) (1) defines "child" as an individual under the age of 17 years, and subsection (a) (3) defines "lawful custody" as, inter alia,

that custody [awarded to a parent, guardian, or other person by a court of competent jurisdiction].

*Thompson v. State*, 245 Ga. App. 396 (1) (537 SE2d 807) (2000). Under OCGA § 16-5-45 (c) (1), the offense constitutes interstate interference with custody when the person removes the child from the state of Georgia.

In challenging the sufficiency of the state's evidence as recounted above, Myers argues that it did not exclude the reasonable hypothesis that he was unaware of the child's age. See OCGA § 24-14-6 ("To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."). But Myers' "reliance upon the reasonable hypothesis rule . . . is misplaced, as this rule applies only when the evidence is entirely circumstantial. Because [L. E. K.'s] testimony provided direct evidence [that Myers knew her age], the reasonable hypothesis rule is not at issue here." *Chamblee v. State*, 333 Ga. App. 749, 752 (777 SE2d 41) (2015) (citation and punctuation omitted). See also OCGA § 24-14-8 ("testimony of a single witness is generally sufficient to establish a fact").

While Myers has cited other conflicting evidence, it was up to the jury to determine witness credibility and resolve conflicts in the evidence. *Carter v. State*, 320

4

Ga. App. 454, 456 (1) (740 SE2d 195) (2013). "[A]s long as there [was] some competent evidence, even though contradicted, to support each fact necessary to make out the [s]tate's case, the jury's verdict will be upheld. Such competent evidence is present here, and we find no error." *Chamblee*, supra at 752-753 (citation and punctuation omitted).

2. *Speedy trial*

Myers contends that the trial court erred in denying his motion for discharge and acquittal because the state violated his constitutional speedy trial rights. We disagree.

> A constitutional speedy-trial claim is evaluated under the two-part framework set out in *Barker[ v. Wingo*, 407 U. S. 514 (92 SCt 2182, 33 LE2d 101) (1972)]. First, the trial court must consider whether the length of time between the defendant's arrest and trial is sufficiently long to be considered presumptively prejudicial. If not, the speedy-trial claim fails at the threshold. A delay of one year or more is typically presumed to be prejudicial. . . . When that threshold is crossed, the trial court proceeds to the second part of the framework, applying a context-focused, four-factor balancing test to determine whether the defendant was denied the right to a speedy trial. These four factors are (1) the length of the delay; (2) the reasons for it; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant.

*Redding v. State*, 313 Ga. 730, 731-732 (2) (873 SE2d 158) (2022) (citations and punctuation omitted).

(a) *Presumptive prejudice*

We agree with Myers that the trial court erred in finding that the delay of 26 months between his arrest and trial was not presumptively prejudicial. As noted above, a "delay of one year or more is typically presumed to be prejudicial." *Redding*, supra at 732 (2). See also *Williams v. State*, 314 Ga. 671, 678 (4) (878 SE2d 553) (2022) (delay of 25 months was presumptively prejudicial). Nevertheless, we also agree with the state that Myers has not shown that he was harmed by this error because the trial court did not end its analysis upon finding no presumptive prejudice, and instead it proceeded to the second part of the *Barker* framework and conducted the four-part balancing test, just as if there had been a finding of presumptive prejudice. See *Leslie v. State*, 301 Ga. 882, 885 (2) (b) (i), n. 2 (804 SE2d 351) (2017) (no reversible error where trial court, despite finding no presumptive prejudice, still "did conduct a proper []*Barker* analysis"); *Nave v. State*, 171 Ga. App. 165, 167 (3) (318 SE2d 753) (1984) (appellant unable to demonstrate harm from trial court's speedy trial decision).

(b) *Four-part balancing test*

"This [balancing] task is committed principally to the discretion of the trial court, and this [c]ourt has a limited role in reviewing the trial court's decision."

6

*Redding*, supra (citation and punctuation omitted). Accordingly, "the trial court's weighing of each factor and its balancing of all four factors — its ultimate judgment — are reviewed on appeal only for abuse of discretion." *Williams*, supra (citation and punctuation omitted). Here, the trial court's ultimate judgment did not constitute an abuse of discretion.

(1) *Length of delay*

This first "factor, [addressing] whether the pretrial delay was uncommonly long, requires courts to analyze the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Labbee v. State*, 362 Ga. App. 558, 562 (2) (a) (869 SE2d 520) (2022) (citation and punctuation omitted). "The length of delay that can be tolerated in a particular case depends to some extent on the complexity and seriousness of the charges in that case. And there is no bright-line rule [as to what constitutes] uncommonly long delays [that] must be weighed heavily against the [s]tate." Id. at 562-563 (2) (a) (citation and punctuation omitted). Indeed, "the idea of a bright-line rule is anathema to the analysis of speedy trial claims . . . [, which must be decided] on an ad hoc basis." *Milner v. State*, 329 Ga. App. 654, 658 (2) (a) (765 SE2d 790) (2014) (citations and punctuation omitted).

Here, the trial court did not find the length of the delay to be uncommonly long, and instead held it to be neutral and benign under the unique circumstances of the case. In doing so, the court noted that while the charge itself was not overly complex, the case was complicated by the year-long statewide emergency prohibiting jury trials because of the COVID-19 pandemic and by the multi-state involvement of law enforcement officials. "The trial court properly considered the peculiar circumstances of this case, and we cannot say that its conclusion that the case was . . . prosecuted with [sufficient] promptness [under those circumstances was] unreasonable." *State v. Buckner*, 292 Ga. 390, 393 (3) (a) (738 S.E.2d 65) (2013). It follows that Myers has failed to demonstrate an abuse of the trial court's substantial discretion on this factor. See *Taylor v. State*, 312 Ga. 1, 12 (4) (b) (i) (860 SE2d 470) (2021) (30-month delay was not uncommonly long under particular circumstances of case).

(2) *Reason for delay*

This second factor "requires the court to examine both the reason for the delay and whether it is attributable to the defendant or the (s)tate." *Labbee*, supra at 563 (2) (b) (citation and punctuation omitted). Here, the trial court correctly found that "neither party [was] responsible for the delays caused by the COVID-19 pandemic[.]"

Id. at 566 (2) (b) (iv). But the court found that the state's failure to expeditiously resolve a conflict of interest involving the district attorney's office was a reason for delay that weighed slightly against the state. Myers has not challenged this finding, but contends that the trial court should have also weighed other reasons for delay against the state, including the retirement of the judge assigned to the case, the creation of a new judicial circuit, and ensuing litigation that delayed the new circuit's operation.

The state concedes that the parties involved in these delays are considered state actors for purposes of speedy trial analysis, so we find that the trial court erred in failing to weigh these delays against the state. But as Myers acknowledges, there is no evidence of any intentional delay undertaken by the state for the purpose of harming him. "Although this type of unintentional delay is relatively neutral or benign, it still must be weighted against the (s)tate." *Labbee*, supra at 564 (2) (b) (i) (citation and punctuation omitted). See also *Buckner*, supra at 394 (3) (b) (deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government, but an unintentional delay should be weighted less heavily).

(3) *Assertion of the right to a speedy trial*

This "factor requires courts to analyze whether the defendant timely asserted his constitutional right to a speedy trial." *Richardson v. State*, 318 Ga. App. 155, 161 (2) (c) (733 SE2d 444) (2012). The parties agree that the trial court correctly found that Myers timely asserted his right to a speedy trial.

(4) *Prejudice*

"The fourth *Barker* factor involves three interests that the speedy trial right was designed to protect: (i) preventing oppressive pretrial incarceration; (ii) minimizing anxiety and concern of the accused; and (iii) limiting the possibility that the defense will be impaired." *State v. Thaxton*, 311 Ga. App. 260, 267 (2) (d) (715 SE2d 480) (2011) (citation and punctuation omitted). "Of these forms of prejudice, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Labbee*, supra at 570 (2) (d) (citation and punctuation omitted).

Here, the trial court found that Myers, who was jailed for five months before being released on bond, had not suffered oppressive pretrial incarceration. Myers has failed to show that "[t]he trial court . . . abuse[d] its discretion in determining that the delay in this case caused no oppressive pretrial incarceration." *Gray v. State*, 303 Ga.

App. 97, 101 (d) (i) (692 SE2d 716) (2010) (involving pretrial incarceration of 11 months).

With regard to anxiety and concern, Myers claims that his health suffered and he was treated for an aneurysm while he was in jail, but he has cited no evidence establishing that his alleged health issues were caused by the pretrial delay. As the trier of fact on these issues, the trial court was entitled to discredit Myers' claims of anxiety and speculation about his health. See *Burney v. State*, 309 Ga. 273, 291 (4) (d) (845 SE2d 625) (2020). "Anxiety and concern of the accused are always present to some extent, and thus absent some unusual showing are not likely to be determinative in defendant's favor." *Mullinax v. State*, 273 Ga. 756, 759 (2) (545 SE2d 891) (2001) (citation and punctuation omitted). The trial court did not abuse its discretion in finding that Myers failed to show undue anxiety or concern caused by the pretrial delay.

Finally, Myers claims that his defense was impaired by the death of a potential witness prior to trial. But as the trial court found, Myers made no proffer of testimony from the potential witness. On the contrary, defense counsel testified at the motion for new trial hearing that she did not even know if the purported witness had any

relevant information. "To establish prejudice, the defendant must show specific evidence of how the delay impaired his ability to defend himself. If the defendant's argument is that a witness has become unavailable, he must show that the unavailable witness could supply material evidence for the defense." *Ferguson v. State*, 303 Ga. App. 341, 345 (2) (d) (693 SE2d 578) (2010) (citations and punctuation omitted). Absent a proffer of any potential testimony, the trial court did not err in finding that Myers failed to show his defense was impaired by the delay.

(5) *Balancing the Barker factors*

As explained above, the trial court correctly analyzed the first, third, and fourth *Barker* factors. As to the second factor, although the trial court properly weighed one reason for delay slightly against the state, it failed to find that other unintentional reasons for delay should have also been weighed against the state.

> However, even if the trial court significantly misapplies the law or clearly errs in a material factual finding, the trial court's exercise of discretion can be affirmed if the appellate court can conclude that, had the trial court used the correct facts and legal analysis, it would have had no discretion to reach a different judgment. Here, [even] if the trial court had properly weighed [all of reasons for delay in] the second factor against the [s]tate[, it would not have been weighed] heavily, given that there was no deliberate effort by the [s]tate to delay the case[. T]he trial court still would have been compelled to deny [the speedy trial claim],

12

given [all the circumstances and Myers'] failure to demonstrate any actual prejudice.

*Labbee*, supra at 573 (2) (e) (citations and punctuation omitted). We therefore affirm the trial court's exercise of its discretion in denying the motion for discharge and acquittal on constitutional speedy trial grounds.

3. *Admission of intrinsic evidence*

Myers argues that the trial court erred in admitting evidence of his sexual acts with L. E. K. as intrinsic evidence. We disagree.

"Evidence is admissible as intrinsic evidence when it is (1) an uncharged offense arising from the same transaction or series of transactions as the charged offense; (2) necessary to complete the story of the crime; or (3) inextricably intertwined with the evidence regarding the charged offense." *Williams v. State*, 302 Ga. 474, 485 (IV) (d) (807 SE2d 350) (2017) (citation and punctuation omitted). "We review a trial court's ruling regarding the admissibility of evidence as intrinsic for an abuse of discretion." *State v. Harris*, 316 Ga. 272, 277 (3) (888 SE2d 50) (2023).

Here, evidence that Myers engaged in sexual acts with the 16-year-old was intertwined with the charged offense and helped complete the story of the crime. As

the trial court found, the evidence was linked in time and circumstances with the charged offense of interstate interference with custody of a child and helped explain motive and context for the crime. "Evidence pertaining to the chain of events explaining the context, motive, and set-up of the crime is properly admitted as intrinsic evidence if it is linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." *Harris v. State*, 310 Ga. 372, 378 (2) (b) (850 SE2d 77) (2020) (citation and punctuation omitted). The trial court did not abuse its discretion in admitting such intrinsic evidence in this case.

4. *Ineffective assistance of counsel*

Myers claims his trial counsel was ineffective because she impeached the credibility of L. E. K. on cross-examination, which opened the door for the state to introduce a forensic interview of L. E. K. as a prior consistent statement that included evidence harmful to the defense. "To prevail on this claim, [Myers] must show both that his counsel's performance was professionally deficient and that he suffered prejudice as a result. We need not review both parts of this test if [he] fails to prove

14

one of them." *Outlaw v. State*, 311 Ga. 396, 406 (4) (858 SE2d 63) (2021) (citation omitted). Myers has failed to prove that his counsel's performance was deficient.

At the motion for new trial hearing, counsel testified that the defense theory was that L. E. K. had misrepresented her age and Myers did not know that she was under 18 years old. Although counsel knew that the forensic interview might be admitted as a prior consistent statement, she made the strategic decision that it was nevertheless best for the defense to attack the credibility of L. E. K. by pointing out inconsistencies between her trial testimony and the interview. Counsel explained that L. E. K. was the state's key witness and her credibility was a major factor in the case. Counsel also testified that she consulted Myers about such strategic decisions regarding evidence, cross-examination, and impeachment of witnesses.

"[T]he cross-examination of a witness is most often grounded in matters of trial tactics and strategy and, in those instances, provides no basis for finding counsel's performance deficient." *Butler v. State*, 273 Ga. 380, 385 (10) (b) (541 SE2d 653) (2001). Accord *Cooper v. State*, 281 Ga. 760, 762 (4) (a) (642 SE2d 817) (2007) ("scope of cross-examination is grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel") (citation and punctuation omitted).

15

Here, counsel's decision to impeach the credibility of the state's key witness by showing inconsistencies in her testimony "was strategic in nature, fell within the scope of reasonable and professional representation, and did not constitute ineffective assistance." *Fossier v. State*, 362 Ga. App 184, 189 (4) (a) (867 SE2d 545) (2021) (citation and punctuation omitted). See also *Alexander v. State*, 348 Ga. App. 859, 869 (3) (d) (825 SE2d 405) (2019) (counsel not ineffective in making strategic decision to point out inconsistencies in victim's account of events during cross-examination). The trial court therefore did not err in denying the motion for new trial on this ground.

5. *Sex offender registration*

The trial court sentenced Myers to serve the maximum term of five years in confinement for his interstate interference with custody conviction. See OCGA § 16-5-45 (c) (3). The court further ordered, as a condition of the sentence, that Myers register as a sex offender. In rejecting Myers' challenge to this sentencing condition, the trial court acknowledged that the offense Myers was convicted of is not among those listed in OCGA § 42-1-12, the sex offender registry statute. Nevertheless, the court found that it was authorized to order him to register as a sexual offender based

on the statute's broader definition of a crime against a minor victim. The court's reasoning, however, was flawed because there was no minor victim in this case.

The trial court noted that the sex offender registry statute defines a minor as an individual under the age of 18 years, see OCGA § 42-1-12 (a) (14), as opposed to offenses such as child molestation which define a child as someone under the age of 16 years. See OCGA § 16-6-4. See also *King v. State*, 346 Ga. App. 362, 368 (1) (816 SE2d 390) (2018) ("[T]he age of consent in Georgia is 16. Consequently, generally speaking, it is not a crime in Georgia to have physical sexual contact with a willing participant who is 16 years of age or older.") (citations and punctuation omitted). The trial court then ruled that the crime committed by Myers in this case met the sex offender registry statute's broader definition of a "[c]riminal offense against a victim who is a minor" because it consisted of "conduct which, by its nature, is a sexual offense against a victim who is a minor." See OCGA § 42-1-12 (a) (9) (B) (xi). Indeed, as defined under the statute, "registration as a sex offender is required for any individual convicted of a *criminal offense against a victim* who is a minor[.]" *Owens v. Urbina*, 296 Ga. 256, 257 (765 SE2d 909) (2014) (citation and punctuation omitted; emphasis in original).

In this case, while it is true that L. E. K. was under 18 at the time of the interference with custody offense of which Myers was convicted, L. E. K. was not the victim of that crime. Rather, in such a case of interference with custody, the victim was "the lawful custodian whose custody has been interfered with[.]" *State v. Evans*, 212 Ga. App. 415, 417 (442 SE2d 287) (1994) (citation and punctuation omitted). See also *Thompson v. State*, 245 Ga. App. 396, 397 (1) (537 SE2d 807) (2000) ("The purpose of OCGA § 16-5-45[, prohibiting interference with custody,] is to protect the custody interests of the child's lawful custodian from interference by another person."); *Stroud v. State*, 200 Ga. App. 387, 390 (1) (408 SE2d 175) (1991) (lawful custodian, not the child, is the victim in a case of interference with child custody).

So even though Myers has been convicted of a felony under Georgia law, the victim of the crime was the child's grandfather who was named as the legal custodian in the indictment, and "it would not constitute a sexual offense [against a victim who is a minor]. As a result, the trial court [in]correctly determined that [Myers could] be required to register as a sex offender [as a condition of his sentence for interference with custody] in Georgia[.]" *Owens*, supra at 258.

18

In support of the court's imposition of the sex offender registration condition, the state alternatively argues that the age of consent in Missouri is 17 and the evidence showed that L. E. K. was under that age when Myers engaged in sexual acts with L. E. K. in his house. But the state has offered no evidence showing that Myers has been convicted of any such sexual offense in Missouri. At sentencing, however, the state presented evidence of Myers' 1991 conviction from Iowa for a sexual offense against a minor. But as the trial court noted, Myers was not required to register as a sex offender as a result of that conviction.

Rather, as explained above, the trial court ordered Myers to register as a sex offender based on its incorrect legal theory that his conviction in this case for interference with custody constituted a criminal offense against a victim who is a minor. Because the basis for the trial court's imposition of that sentencing condition was legally erroneous, we must vacate that condition and direct the trial court on remand to "resentenc[e Myers] consistent with this opinion." *Owens v. State*, 353 Ga. App. 848, 852 (2) (d) (840 SE2d 70) (2020). See also *Nazario v. State*, 293 Ga. 480, 485-486 (2) (b) (746 SE2d 109) (2013) (appeals court must vacate an illegal sentence).

*Judgment affirmed in part, vacated in part, and case remanded with direction. Brown and Markle, JJ., concur.*